UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

West Palm Beach Division

CASE NO.: _____

JOHN DOE,

      Plaintiff,

v.

LYNN UNIVERSITY, INC.,
a Florida not for profit corporation
d/b/a Lynn University,

      Defendants.

_____/

## COMPLAINT

Plaintiff, JOHN DOE ("Plaintiff"), sues Defendant, LYNN UNIVERSITY, INC., a Florida not for profit corporation d/b/a Lynn University, and alleges:

**I.**      **Nature of the Action**

1.    Plaintiff John Doe[1] seeks relief against Defendant Lynn University, Inc. ("Lynn") following Lynn's wrongful and unjustified imposition of sanctions against Plaintiff, a Lynn freshman, based on a fellow student's false and unproven allegations of sexual battery. This injustice was the direct result of Lynn's failure to (1) conduct an adequate investigation and (2) provide Plaintiff with due process as defined by Lynn's own policies, and also due to (3) Lynn's excessive and unbalanced focus on the concerns and interests of the female student complainant

_____

[1]    Plaintiff files herewith a motion for leave to use pseudonyms.

and the convenience of the University to the total exclusion of the rights and interests of the male Plaintiff.

2.      Lynn's unjustified actions violated its contract with Plaintiff; the Lynn University Student Code of Conduct; and the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX"). Plaintiff is covered by the protections of Title IX against gender-based educational discrimination.

3.      Lynn's arbitrary and capricious findings and disciplinary actions, imposed by Laura Matthews, Lynn's Director of Student Conduct and Community Standards ("Matthews"), and ratified by her superior, Gary R. Martin, Lynn's Dean of Students, have caused Plaintiff grievous harm, including derailing his college education, depriving him of athletic and academic scholarships and other financial aid for obtaining a college degree, tarnishing his reputation, and permanently damaging his future career and educational prospects. The sanctions imposed against Plaintiff by Lynn include a one-year suspension and a long-term disciplinary probation.

**II.    Parties**

4.      Plaintiff John Doe ("John Doe" or "Plaintiff") is a male natural person residing in Miami-Dade County, Florida. During the events described in this pleading, Plaintiff was a full-time freshman student at Lynn University and resided in a university owned and operated dormitory building on the university campus in Boca Raton, Florida. At the time of the events described in this pleading he was a minor aged 17, and the female complainant, Erin Metcalf, was an adult aged 18.

5.      Defendant Lynn University, Inc. ("Lynn") owns and operates a private coeducational, residential institution of higher learning with its campus located at 3601 North

Military Trail, Boca Raton, Florida 33431. It has more than 2,500 students enrolled. Lynn is a Florida not for profit corporation that receives federal funds pursuant to Title IX.

6.     Lynn's agent and authorized representative, Matthews, exercised overall responsibility for the disciplinary charges brought by Lynn against Plaintiff, for the inadequate investigation of the allegations made against him, for the flawed conduct hearing held to determine the validity of the charges, for favoring Metcalf over Plaintiff on the basis of gender, for erroneously finding Plaintiff guilty and imposing sanctions against him, and for related acts and omissions alleged herein.

### III. Jurisdiction and Venue

7.     This Court has federal question and supplemental subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because: (i) the claims herein arise under federal law; and (ii) the state law claims asserted in this pleading are so closely related to ands intertwined with the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

8.     This Court has personal jurisdiction over Defendant Lynn on the grounds that Defendant Lynn is located and is conducting business within the Southern District of Florida.

9.     Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted by Plaintiff in this pleading occurred in this judicial district, and the Defendant Lynn has its principal business office and does business within this district.

IV.     **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

A.     **Plaintiff's enrollment at Lynn University**

10.    Plaintiff graduated from a selective Miami high school in 2015 with academic distinction ("cum laude") and a record of outstanding performance as an athlete.  In November of 2014, while a high school senior, Plaintiff was admitted as a student by Lynn and he signed an Athlete-Baseball Letter of Intent. He enrolled and began his freshman year at Lynn during the fall semester of the 2015-16 academic year, majoring in Biology, and moved on campus to live at a Lynn dormitory on August 28, 2015, a week before classes started.  He also enrolled in Lynn's baseball team as a middle infielder.

11.    As part of its admissions packet, Lynn provided Plaintiff with copies of its school policies, including the 2015-2016 Student Code of Conduct at Lynn University (the "Code") that Lynn was supposed to apply at the time it took disciplinary action against Plaintiff. A copy of the Code is available online and is incorporated to this pleading by reference: https://my.lynn.edu/ICS/icsfs/Student_Code_of_Conduct.pdf?target=918feeed-cdd8-4f9b-9bab-c4b82b17268b.

12.    The cost of tuition at Lynn for full-time undergraduate students like Plaintiff  (not including books, fees, or room and board) is approximately $35,200.00.  As he began his studies at Lynn, Plaintiff was the beneficiary of the following financial aid, without which he could not have gone to college: A) Scholarships: $5,000.00 Athlete's Scholarship, $12,0000.00 Dean's Academic Scholarship; B) Grants: $5,776.00 Federal Student Aid, $3,000.00 Florida Resident Grant, $2,100.00 Florida Student Assistant Grant, and C)  Federal Student Loans: $3,500.00 Federal Direct Loan, Subsidized, and $2,000.00 Federal Direct Loan, Un-Subsidized.

13.     The dormitory in which Plaintiff resided on campus, Freiburger Residence Hall ("Freiburger"), is a two-story building that houses both male and female students and has community bathrooms on each floor. While Lynn ostensibly has a policy prohibiting students who are under the age of 21 (which is the legal drinking age in the state of Florida) from drinking alcoholic beverages at this dormitory, the policy is never enforced and, as Lynn well knows, minors and other students consume alcoholic beverages, including at parties, inside the dormitory. A short video tour of this dormitory is posted by Lynn online at http://www.lynn.edu/life-at-lynn/housing/housing-options/freiburger-residence-hall.

**B.     The Evening of Friday, September 18, 2015**

14.     On the evening of Friday, September 18, 2015, less than three weeks after Plaintiff had moved into his campus dormitory, several underage students held a party with alcoholic beverages at the second floor Freiburger room, No. 4207, of Lynn student Trevor Stick ("Stick"), then 20 years old. The words spread that a party was taking place.

15.     Plaintiff and Metcalf met each other for the first time in the hallway by Stick's room and proceeded to engage in conversation. Metcalf was laughing and acting normally and showed no signs of being intoxicated.

16.     After further conversation Metcalf and Plaintiff agreed to go, and walked, to Plaintiff's Freiburger room down the hall from Stick's room, where the two teenagers met in private behind a closed door around 8:30 P.M. with nobody else present. There were no witnesses present and no photographs or video or audio recordings of the encounter were taken or made.

17.     During that brief visit to Plaintiff's room, Plaintiff and Metcalf engaged in consensual sexual intercourse after Plaintiff put on a condom. At all times Metcalf remained

willing and clear-headed, and showed no signs of intoxication or incapacity.  Metcalf expressed her consent and pleasure with the couple's sexual activities, and at no time expressed in actions or words that she was uncomfortable or withdrawing her consent.  Afterwards, Metcalf was still speaking to other students without impediment and still appeared normal and not intoxicated.

18.   At no time during her visit to Plaintiff's room did Metcalf exhibit slurred speech, vomiting, unsteady gait, combativeness, emotional volatility, or other signs of alcoholic intoxication or alcohol-induced incapacity. She was never helpless, unconscious, or otherwise unaware that sexual activity was occurring, and at all times she was fully capable of making an informed and rational decision to engage in sexual activity with Plaintiff, and had conscious knowledge of the nature of the act. She fully understood the who, what, when, where, why, and how of the sexual interaction taking place between her and Plaintiff.

19.   Lynn campus surveillance video shows Metcalf walking and acting normally both before and after her encounter with Plaintiff. The Campus Video Evidence showed Metcalf at approximately 7:00 P.M. on September 18 entering a dining hall, walking in a normal manner, unassisted, smiling, and talking with a friend, showing no evidence of intoxication. At around 7:30 to 8:00 P.M. the Campus Video Evidence showed Metcalf walking out of the dining hall juggling two cups full of liquid, and at one point standing on one foot while kicking the elevator door button open with the other, never losing her balance or having problems balancing drinks in each hand, and never showing any sign of intoxication.

20.   Boca Raton Police Department detectives who later reviewed these videos reported that "Video was collected and provided by Lynn Security ... The surveillance cameras did capture Metcalfe returning to her dorm with Stick and her other friends. Metcalf did have her arms around Stick and another student, Matt [Gluntz, 18 years old]. However she appeared

to be walking and was smiling. At one point in front of the elevator the camera captured Metcalf raise her leg and kick the elevator button with her foot. While in the elevator with her friends she was observed laughing at which time it appeared there was no problem."

21.     Metcalf was again seen in Campus Video leaving her building dorm, then entering and exiting the dining hall accompanied by two friends, walking normally, unassisted, showing no sign of being intoxicated, even dancing on the soccer field with one of her friends.

22.     The following day, unbeknownst to Plaintiff, Metcalf filed a rape complaint with the Lynn University "Campus Safety" security staff, which in turn forwarded the matter to the Boca Raton Police Department for handling. In the ensuing investigation Plaintiff spoke freely with the officers about what had transpired between himself and Metcalf in his room and explained that it had all been consensual.

23.     Through the intercession of the Boca Raton police officers, Metcalf was assisted by an advocate from the Palm Beach County Victim Services and Certified Rape Crisis Center, and was taken to the Butterfly House Sexual Assault Care Center at the Wellington Regional Medical Center for examination.  The clothes she had worn during and after her encounter with Plaintiff were collected and placed into evidence at the Boca Raton Police Department.

24.     When interviewed with video recording by female detectives from the Boca Raton Police Department, Metcalf never claimed that she had been raped by Plaintiff or forced by Plaintiff to engage in nonconsensual sexual intercourse against her will. She was never subjected to a blood alcohol test.

25.     As the police reports state, Metcalf "admitted that she never attempted to resist [Plaintiff] or say 'no' to anything that happened from when he told her to go into his room to having sex with him. ... maybe I said 'yes'." The Boca Raton Police Department reports also

note that  Metcalf "never said that '[Plaintiff] raped her'. She stated that 'he had sex with me'. She also admitted that approximately two weeks prior that she had consensual sex with Stick."

26.     Both Lynn University campus security staff and Boca Raton police officers found no evidence of any violence having been perpetrated by Plaintiff against Metcalf during or in connection with their consensual sexual encounter.

27.     The Boca Raton police officers also noted in their reports that Ms. Metcalf "did not say anything to her friends regarding a sexual assault" on the night of the alleged incident, and it was only on the following day that she made the claim to campus security that she had been raped. She said she did so after her roommates and friends "encouraged her" to report the alleged incident. Further, she said that it was her parents who wanted her to accuse Plaintiff of rape and she did not.

28.     The Boca Raton police officers concluded their investigation of Metcalf's rape allegation with this clear and unambiguous finding: "At this time due to the statements provided by Metcalf and [Plaintiff], video obtained, and witness information, there is no evidence that a sexual battery occurred. … [T]here was no evidence of any force, coercion, or resistance. At this time no criminal charges will be filed. I request this case be [classified as] unfounded."

**C.     Lynn brings Plaintiff up on unfounded disciplinary rape charges**

29.     In spite of the fact that all the available evidence demonstrated that the sexual activity between Plaintiff and Metcalf had been fully consensual, and that Metcalf had not been incapacitated at the time, Lynn decided to prosecute Plaintiff for an alleged rape of Metcalf, in part to avoid possible adverse financial consequences under Title IX.

30.     Plaintiff first learned that Metcalf had accused him of rape when he was contacted by Boca Raton police detectives on September 23, 2015, while Plaintiff was practicing with the Lynn baseball team.

31.     On September 25, 2015, Lynn formally informed Plaintiff that he was accused of having engaged in "Non-Consensual Sexual Intercourse" in violation of Section V(1), (B), of Lynn's Title IX "Sexual and Gender-Based Misconduct Policy." A copy of the Policy is available online at http://www.lynn.edu/about-lynn/university-policies/policy-manuals/sexual-and-gender-based-misconduct-policy and is incorporated to this pleading by reference. The Policy was first provided to Plaintiff on September 24, 2015, by Lynn's Title IX Coordinator, Lorna Fink.

32.     In a November 30, 2015, communication to Plaintiff by Matthews, she informed him that he had been charged with being "involved in non-consensual sexual intercourse with someone that was incapable of consenting due to alcohol," in violation of Section 6.6.1.25 of the Lynn Student Code of Conduct and Section V, (B) of the university's Sexual and Gender-Based Misconduct Policy. According to Lynn, it was alleged that such a form of sexual activity constitutes "discrimination prohibited by Title IX."

33.     Lynn's Sexual and Gender-Based Misconduct Policy, Section 8.5.3, enacted under Title IX, defines "Incapacitation" as follows:

> "Incapacitation is a state where an individual cannot make an informed and rational decision to engage in sexual activity because she/he lacks conscious knowledge of the nature of the act (e.g., to understand the who, what, when, where, why or how of the sexual interaction) and/or is physically helpless. An individual is incapacitated, and therefore unable to give consent, if she/he is asleep, unconscious or otherwise unaware that sexual activity is occurring. *Where alcohol or other drugs are involved, incapacitation is a state beyond drunkenness or intoxication.* The impact of alcohol and other drugs varies from person to person; however, warning signs that a person may be approaching incapacitation may include slurred speech, vomiting, unsteady gait, odor of

alcohol, combativeness or emotional volatility. Evaluating incapacitation requires an assessment of how the consumption of alcohol and/or drugs affects an individual's: • Decision-making ability; • Awareness of consequences; • Ability to make informed judgments; • Capacity to appreciate the nature and the quality of the act; or • Level of consciousness. Evaluating incapacitation also requires an assessment of whether a respondent should have been aware of the complainant's incapacitation based on objectivity and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in the respondent's position. An individual who engages in sexual activity with someone the individual knows or reasonably should know is incapable of making a rational, reasonable decision about whether to engage in sexual activity is in violation of this Policy." (italics supplied).

34.    On December 4, 2015, Lynn then scheduled a "Conduct Hearing" on campus for Plaintiff only a week later, on December 11, 2015, at 3 P.M. in Matthews' office. She reminded Plaintiff in a letter dated December 8, 2015, "[Y]ou have the right to be accompanied by an advisor who may participate only as a silent observer." Plaintiff asked Matthews on December 10, 2015, to be allowed to question the witnesses, but Matthews refused in an email response on the same date, stating, "I will ask questions of all parties." Plaintiff brought his mother, who is not a lawyer, to the conduct hearing as his silent advisor.

35.    Prior to holding the hearing, Lynn repeatedly violated its policies and denied Plaintiff due process, and discriminated against him on the basis of his gender,  by, inter alia, the following irregularities:

a.    Allowing Metcalf to have a private lawyer representing her as her advisor, even though Lynn's Student Code of Conduct (Section 6.6.2.5.2, 6) provides that "Only Lynn University professional staff or faculty members may act as advisors," and (Section 6.6.2.5.5) "A student may not be accompanied by legal counsel (whether a practicing attorney or not) unless criminal charges are pending or foreseeable, in which case an attorney can accompany the student for the sole purpose of advising the student during the conduct review."

b.    Allowing multiple ex parte communications between Metcalf's advisor – a lawyer -- and the investigators, as well as ex parte communications from Metcalf's mother, all trying to influence the proceedings against Plaintiff;

c.    Allowing Metcalf's lawyer to view the campus evidence videos during the investigation process;

d.    Allowing Metcalf's lawyer to approach, question, and, upon information and belief, very likely coerce, manipulate, and coach potential witnesses as to changes in their future statements, including at least three of the students who testified at the conduct hearing, Justina Stephen, Colleen Reilly, and Alena Dale; and

e.    Not conducting a "prompt and thorough" investigation of the allegations made by Metcalf against Plaintiff, in violation of Plaintiff's rights under Lynn's Sexual and Gender-Based Misconduct Policy, Appendix C.

f.    Suspending Plaintiff arbitrarily from the university's baseball team on October 19, 2015, almost eight weeks before Plaintiff even had a conduct hearing or an adjudication of Metcalf's accusations against him, something done at the insistence of Metcalf's lawyer that this sanction be imposed through her communications with Lynn's Director of Athletics Devin Crosby.

36.    Further, while Metcalf was represented by a private attorney, Plaintiff was not represented by counsel because Lorna Fink, Lynn's Title IX Coordinator, had told Plaintiff's mother, who asked her whether Plaintiff should have a lawyer, that having a lawyer for the Conduct Hearing was not necessary, and that Plaintiff's mother could act as his advisor. Fink also informed Plaintiff that he could have an advisor serve strictly as a "silent observer" at any disciplinary proceeding. Metcalf's lawyer is a highly experienced criminal defense attorney who

is of counsel to a large Miami law firm and is a member of the firm's White Collar Criminal and Civil Fraud Defense Group.  She has been practicing law for 35 years, and typically represents individuals under investigation or charged with criminal offenses in federal and state courts, and has brought more than 100 jury trials to verdict.

37.  The Lynn Conduct Hearing on the afternoon of December 11, 2015, was held in Matthews' office at the Lynn campus and lasted just over two hours; it was a totally flawed and unfair proceeding titled heavily against Plaintiff, a travesty of justice during which, inter alia,

a.  The hearing officer acting as a judge without a jury, Laura Matthews, Lynn's Director of Student Conduct and Community Standards and a female, announced to the witnesses called to testify at the hearing that they would not "get in trouble" over their illegal underage consumption of alcohol at the campus dormitories, behavior blatantly violative of university policy, a blanket promise of prosecutorial immunity that likely affected their unsworn testimony. In any event, prosecuting Plaintiff and allowing other students to violate other university policies without any consequences amounts to selective prosecution of Plaintiff by Lynn;

b.  While Lynn's "Sexual and Gender-Based Misconduct Policy"   (Section 8.11.1.5(a) provides that a student's advisor "may participate as a 'silent observer' in any meeting or proceeding related to the investigation or resolution to process," Metcalf's lawyer was not a "silent observer," and during the conduct hearing Metcalf's lawyer was allowed by Matthews to intervene in the proceedings numerous times; Metcalf only repeated what her attorney told her to say, and otherwise her lawyer answered questions for her the whole time, making the adjudicatory hearing one-sided, unfair, and a gross violation of university policy, resulting in blatant procedural unfairness and significant prejudice to Plaintiff;

c.   The witnesses were not required to testify under oath or under penalty of perjury, or based on their personal knowledge, hearsay and irrelevant testimony was allowed, and Matthews did not permit Plaintiff to conduct a full and fair cross-examination;

d.   While on December 10, 2015, in advance of the conduct hearing, Plaintiff submitted 60 questions in writing that he wanted Matthews to ask of Metcalf and the other witnesses at the hearing, Matthews refused to do so, saying that she "already knew the answers." Plaintiff also requested that other questions be asked of the witnesses during the hearing, but Matthews again refused to allow Plaintiff's questions to be asked.   In contrast, the questions posed during the hearing to Metcalf were all prepared by her advisor/attorney – she would write the questions and give them to Matthews to ask.  Additionally, Matthews allowed Metcalf's lawyer advisor to tell Metcalf during the hearing how to answer every question posed to her by Matthews;

e.   The student witnesses were allowed to testify, without having any qualifications to do so, regarding their opinion as to whether Metcalf was intoxicated at the time she went with Plaintiff to Plaintiff's room, and also thereafter;

f.   One of the witnesses, student Michael Stellato, was allowed by Matthews to testify by telephone without prior notice or Plaintiff's consent, further depriving Plaintiff of the right to cross-examination; Matthews allowed Stellato's testimony, even though he stated that he had been too drunk on the night of September 18, 2015, to remember any of the facts;

g.   No expert testimony was presented regarding whether Metcalf was intoxicated or incapacitated at the time that she engaged in sexual intercourse with Plaintiff;

h.   The Boca Raton police detectives who had investigated Metcalf's allegations and concluded that no sexual battery had occurred, were not called to testify, and their reports

showing that there had not been any non-consensual sexual activity between Metcalf and Plaintiff were not given any consideration;

i.    No one was called to testify from the Sexual Assault Care Center where Metcalf was treated on the day after here encounter with Plaintiff, and the physical evidence secured by the Boca Raton Police Department was not presented as evidence; and

j.    Although Matthews had not provided Plaintiff in advance any time limitations for the hearing, after the witnesses had testified, Matthews allowed Metcalf to read in its entirety a closing statement, but after Plaintiff started delivering his own closing statement Matthews cut him short and did not allow him to finish, saying that time had run out.

38.    Four days later, on December 15, 2015, Matthews found Santana guilty as charged. "I have made a decision in your case," Matthews wrote Plaintiff. "Based on a preponderance of the information provided, you have been found to have engaged in non-consensual sexual intercourse with someone that was incapable of consenting due to alcohol on the evening of September 18, 2015, on the Lynn University campus. … [I]t is likely that as a result of alcohol consumption, the complainant had been unable to fully comprehend what was taking place the night of the incident, and lacked the ability to make rational, reasonable judgments. As a result, it is more likely than not that the complainant did not have the capacity to provide consent to any sexual act due to her level of impairment from alcohol on the night of the incident."

39.    In her decision Matthews misapplied Lynn's clear standard of "incapacity," set forth above in Paragraph 33 of this pleading, in deciding, incorrectly, that Metcalf was not able to consent to engaging in sexual intercourse with Plaintiff merely because she had been drinking alcoholic beverages on the night in question, without finding that she had been incapacitated as a

result of consuming alcohol.

40.     Matthews' letter allowed only 24 hours for Plaintiff to file a notice of appeal, which he did on December 16, 2015. At that time undersigned counsel were asked to and agreed to provide Plaintiff legal representation in the appeal.

41.     Counsel for Plaintiff then filed an appeal memorandum with Gary R. Martin, Lynn's Dean of Students and disciplinary appellate officer on January 5, 2016, requesting, inter alia, that the appeal include an evidentiary hearing where counsel for Plaintiff were provided the opportunity to present evidence and legal argument on Plaintiff's behalf, including examining Metcalf under oath. Those requests were denied by Martin.

42.     Martin insisted that he wanted to make a determination on the appeal no later than January 8, 2016.

43.     On January 6, 2016, Martin met briefly in his campus office with Plaintiff and his attorney, Frank L. Labrador, Esquire, to discuss the facts of the case for appellate purposes.

44.     Two days later, on January 8, 2016, Martin rendered his decision on the appeal, affirming the findings made and penalties imposed by Matthews. He concluded that the "preponderance of the evidence" demonstrated that Plaintiff had engaged in "non-consensual sexual intercourse (due to alcohol) which is a violation of the University's [Title IX] policy pertaining to Sexual and Gender Based Misconduct."

45.     Having been railroaded by Lynn because of his gender, any attempt by Plaintiff to move on with his future in the face of Lynn's arbitrary and capricious decisions will be met with great resistance and little success; it is a known fact that the likelihood of his acceptance as a transfer student for an undergraduate degree at an institution with a similar academic reputation and to a graduate institution of high caliber is reduced in light of the high number of applicants

and stiff competition, let alone the social stigma associated with being found responsible for "sexual misconduct."

**V.  Individual Claims for Relief**

**Count I -- FIRST CLAIM FOR RELIEF**

**Violation of Title IX of the Education Amendments of 1972**

**(Erroneous Outcome)**

46.     Plaintiff incorporates by reference here Paragraphs 1-45 of this pleading.

47.     Title IX is a comprehensive federal law that prohibits discrimination on the basis of gender in any federally funded education program or activity. It states in part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

48.     The principal objective of Title IX is to avoid the use of federal money to support sex discrimination in education programs and to provide individual citizens effective protection against those practices. Title IX prohibits the imposition of university discipline where gender is a motivating factor in the decision to discipline.

49.     Lynn receives federal funding for research and development and for other purposes.

50.     Both the U.S. Department of Education and the U.S. Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student ... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dept. of Education); 28 C.F.R. § 54.135(b) (Dept. of Justice). Such

prohibited actions include all forms of sexual harassment, including nonconsensual sexual intercourse, sexual assault, and rape.

51.     In January of 2001, the United States Department of Education, Office for Civil Rights, published a set of compliance standards for Title IX educational institutions to apply in sexual harassment matters, including standards for "Prompt and Equitable Grievance Procedures" and "Due Process Rights of the Accused." 66 F.R. 5512 ("OCR Standards"). This "Guidance" is available online at http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf.

52.     The OCR Standards require covered institutions like Lynn not only to "ensure the Title IX rights of the complainant," but also to "accord [] due process to *both* parties involved." (italics supplied).

53.     The OCR Standards require schools to adopt "prompt and equitable" procedures including, at a minimum:

   a.   "Notice . . . of the procedure, including where complaints may be filed";

   b.   "Application of the procedure to complaints alleging [sexual] harassment...";

   c.   "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

   d.   "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

   e.   "Notice to the parties of the outcome of the complaint..."

54.     The OCR Standards also require Title IX schools like Lynn to ensure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes 'alleged sexual assaults'."

55.     Lynn's overall sexual misconduct complaint program as applied in Plaintiff's case fails to comply with the OCR standards in several ways, including (but not limited to):

a.      Adopting and implementing procedures that afford greater prerogatives and protections to the (female) accuser than to the (male) accused; and

b.      Failing to provide adequate training for the Lynn employees charged with the responsibility of protecting students' rights under Title IX.

56.      In its pre-hearing investigation of the complaint against Plaintiff, Lynn failed to comply with Title IX's due process standards generally, as well as the OCR Standards, in multiple ways, including without limitation:

a.      Failing to perform a prompt, thorough, and impartial investigation of all evidence from both parties;

b.      Failing to investigate beyond the materials voluntarily provided by the parties; and

c.      Failing to retrieve documentary and physical evidence relevant to the investigation.

57.     In its conduct of the adjudicatory conduct hearing, Lynn failed to comply with Title IX's due process standards generally, as well as the OCR Standards, in multiple ways, including without limitation:

a.      Effectively presuming Plaintiff's guilt because of his male gender before an investigation into the accusation against him was underway.

b.      Failing to challenge Metcalf's numerous inconsistencies in her statements or to consider seriously the lack of corroboration of her claims of non-consensual sex because of her female gender.

c.      Failing to adequately consider exculpatory evidence or interview key witnesses in support of Plaintiff's defense of consent because of Plaintiff's male gender.

58.      In reaching its decision and imposing sanctions on Plaintiff, Lynn deprived Plaintiff of the due process and equal protection rights required by the OCR Standards by, among other things:

a.      Finding Plaintiff responsible as charged under flawed procedures notwithstanding the complete lack of evidence to corroborate Metcalf's allegations;

b.      Finding Plaintiff responsible of non-consensual sexual intercourse, despite extensive evidence of consent including Plaintiff's statement, Metcalf's admissions in her statement to the Boca Raton Police of providing consent, and significant issues with Metcalf's credibility;

c.      Imposing sanctions on Plaintiff while excusing his accuser, Metcalf, as well as Stick and other Lynn student partiers under 21 years of age, including Matthew Gluntz, 18, Alena Dale, 18, and Justina Stephens, 18, from sanctions for their admitted violations of the university's policy against underage drinking of alcoholic beverages in a campus dormitory. Metcalf, Gluntz, Dale, and Stephens all testified at Plaintiff's conduct hearing; and

d.      Imposing sanctions that were unwarranted and disproportionate to the severity of the charge levied against Plaintiff without any consideration of his clean disciplinary record at Lynn and the lack of any aggravating circumstances.

59.      By treating Metcalf, a female, more favorably than Plaintiff in its disciplinary investigative and adjudicatory process, the defendant Lynn discriminated against Plaintiff because of sex; the discrimination was intentional; and the discrimination was a substantial and/or a motivating factor for the defendant's actions.

60.     Lynn has deprived Plaintiff, on the basis of his sex, of his due process and equal protection rights through the flawed enforcement of guidelines and regulations that are unfair and imbalanced to male students while unduly favoring female students, and the failure to implement the limited protections that appear in those guidelines and regulations

61.     Lynn's gender-biased policies also suit its institutional convenience, accommodating pressures imposed upon it by the recent national media focus on campus sexual misconduct and campus investigations by the Department of Education's Office of Civil Rights.

62.     Based on the foregoing, Lynn engaged in a series of actions that ultimately resulted in Matthews' erroneous finding that Plaintiff had engaged in sexual misconduct. Her decision was the result of intentional discrimination against Plaintiff on the basis of his male gender, in violation of Title IX.

63.     Moreover, while there was no evidence that Plaintiff and Metcalf engaged in sexual intercourse without Metcalf's consent, or while Metcalf was incapacitated, Lynn still proceeded to find Plaintiff responsible of sexual misconduct, a finding that was fatally flawed.

64.     The erroneous outcome of the Conduct Hearing was due to gender bias against Plaintiff, as demonstrated by the multiple procedural missteps demonstrated by Lynn throughout the entire investigative and adjudicatory process favoring Metcalf to the detriment of Plaintiff.

65.     Lynn is primarily concerned with its image and reputation to potential incoming students and their parents, rather than its obligations to provide a fair and equitable investigative process to all its students regardless of gender.

66.     Plaintiff suffered an erroneous outcome when Lynn found him guilty of sexual misconduct on the basis of his male gender, and the discrimination was willful, deliberate, and intentional.

67.     Lynn's violations of its obligations under Title IX proximately caused Plaintiff to sustain tremendous damages, including, without limitation, emotional distress, economic injuries, reputational damages, and the loss of educational opportunities and other direct and consequential damages.

68.     Plaintiff is entitled to compensatory damages for the harm he suffered as a result of Lynn's violation of its Title IX obligations.

69.     As a result of the Defendant Lynn's foregoing wrongful acts, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' and expert witness fees, litigation expenses, and court costs and disbursements pursuant to 42 U.S.C. § 1988(b).

**COUNT II - SECOND CLAIM FOR RELIEF**

**<u>Breach of Contract</u>**

70.     Plaintiff incorporates by reference here Paragraphs 1-45 of this pleading.

71.      Under Florida state law, Lynn had contractual obligations to the Plaintiff, including under the Student Code of Conduct, the Title IX policies, and other university policies affecting students. Lynn created express and implied contracts when Plaintiff accepted an offer of admission to Lynn, paid the tuition and fees for his first semester, moved into a university dormitory, and started attending classes and practicing with the university's baseball team.

72.     Lynn promised to allow its community members, including Plaintiff, to live in a discrimination-free environment.

73.     Lynn committed numerous investigative and procedural missteps, failed to engage in impartial fact finding, failed to fairly weigh evidence presented by Plaintiff, and harbored an overall institutional gender bias against Plaintiff as the male student accused of sexual

misconduct by a female student during his student conduct hearing, and prior thereto, all of which led to the erroneous decision.

74.     Lynn's discrimination of Plaintiff on the basis of his male gender breached its own policies, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

75.     Lynn prohibits the illegal possession or use of alcohol in its campus dormitories by students who are not at least 21 years of age, in accordance with Florida law, which is considered a violation of Section 6.6.1.2.3 of the Student Code of Conduct.

76.     During the course of the student conduct process, Metcalf and other Lynn students under the age of 21 admitted that they unlawfully consumed alcohol in the campus dormitories on the night of September 18, 2015, as minors; however, Lynn arbitrarily and discriminatorily saw fit not to charge any of them with this University offense even while pursuing disciplinary charges against Plaintiff.

77.     Lynn's failure to investigate or charge Metcalf and the other students with a violation of the alcohol policy breached its own policies, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

78.     Lynn has deprived Plaintiff of his contractual rights to due process and equal protection through the improper administration of the student conduct hearing process in violation of Lynn's guidelines and regulations.

79.     Lynn failed to protect Plaintiff by standards of justice and fairness during the investigation of the charge brought against him by Metcalf and the conduct hearing.

80.     Lynn's incomplete and arbitrary actions breached Title IX, the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

81.     Plaintiff is entitled to recover damages for Lynn's breach of the express and/or implied contractual obligations described above.

82.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**COUNT III – THIRD CLAIM FOR RELIEF**

**Breach of Covenant of Good Faith and Fair Dealing**

83.     Plaintiff incorporates by reference here Paragraphs 1-45 of this pleading.

84.     Based on the aforementioned facts and circumstances, Lynn breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Plaintiff by meting out a disproportionate sanction against Plaintiff, notwithstanding the lack of evidence in support of Metcalf's claim of non-consensual sex, and by not enforcing the Student Code of Conduct against the underage students for consuming alcohol in a university dormitory. The sanctions against Plaintiff are also disproportionate considering that Plaintiff had no prior history of misconduct.

85.     As a direct and foreseeable consequence of these breaches, Plaintiff sustained tremendous damages, including, without limitation, emotional distress, economic injuries, and other direct and consequential damages.

86.     Plaintiff is entitled to recover damages for Lynn's breach of the express and/or implied contractual obligations described above.

87.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**COUNT IV - FOURTH CLAIM FOR RELIEF**

**Injunctive Relief**

88.     Plaintiff incorporates by reference here Paragraphs 1-45 of this pleading.

89.     By virtue of Lynn's violation of Plaintiff's contractual, due process, and equal protection rights, including under Title IX, Plaintiff has suffered irreparable harm for which money damages are an inadequate remedy.

90.     To address that harm, Plaintiff is entitled to injunctive relief from this Honorable Court ordering Lynn to (i) reverse the outcome and findings made by Matthews and Martin as agents and on behalf of Lynn against Plaintiff finding him guilty of sexual misconduct; (ii) expunge all negative references contained in Plaintiff's disciplinary record; (iii) remove all references of Plaintiff's suspension and sanctions from his education file, and (iv) permanently destroy any record of Plaintiff's conduct hearing and findings resulting from it.

**VI.     Prayer for Relief**

91.     WHEREFORE, for the foregoing reasons, and based on the evidence to be presented at the trial of this action, Plaintiff respectfully requests the following relief against Defendant Lynn University, Inc.:

(i)     An award of compensatory damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional distress, economic injuries, and other direct and consequential damages, plus prejudgment interest, attorneys' and expert witness fees, expenses, costs, and disbursements;

(ii)     The issuance of an injunction ordering Lynn University to (i) reverse the outcome and findings made by Lynn following Plaintiff's conduct hearing; (ii) restore Plaintiff's good standing at Lynn University, including his scholarships and other financial aid and membership

in the baseball team; (iii) expunge any negative references from Plaintiff's disciplinary record; (iv) remove the record of Plaintiff's suspension from his education file; and (v) permanently destroy any record of Plaintiff's conduct hearing and resulting penalties; and

(iii)    Such other and further relief as the Court deems just, equitable and proper.

**VII.    <u>Jury Demand</u>**

92.    Plaintiff demands a trial by jury of all issues triable by law before a jury in this action.

> **DLD LAWYERS**
> **DEMAHY LABRADOR & DRAKE, P.A.**
> Attorneys for Plaintiff
> 150 Alhambra Circle, PH
> Coral Gables, FL 33134
> Tel.:  (305) 443-4850
> Fax: (305) 443-5960
>
> <u>s/  Angel Castillo, Jr.</u>
> Angel Castillo, Jr.
> Florida Bar No. 0273465
> Email: acastillo@dldlawyers.com
> Frank L. Labrador
> Florida Bar No. 796980
> Email: flabrador@dldlawyers.com
>
> Dated: May 27, 2016