UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:16-CV-80850-RLR

JOHN DOE,

    Plaintiff,

vs.

LYNN UNIVERSITY, INC.

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Lynn University, Inc. ("Lynn," "Lynn University," or "Defendant"), pursuant to Fed. R. Civ. P. 12(b) (6), hereby files this Motion to Dismiss the Complaint filed by Plaintiff, John Doe ("Plaintiff"), and in support thereof states as follows:

Following a party where Jane Doe[1] had been drinking heavily, she complained to Lynn University campus security that she had been raped when someone had sex with her while she was too impaired by alcohol to consent.[2] She initially did not even know the name of the person who assaulted her and could provide only a physical description. Jane Doe's complaint to campus security triggered a criminal investigation by the Boca Raton Police Department. Based on the

---

[1] Plaintiff's counsel has pled this matter in one of the most offensive ways imaginable. Namely, counsel has asked this Court to allow Plaintiff to proceed anonymously because, among other reasons, "the litigation concerns a sexual encounter between the Plaintiff and his accuser, a highly intimate and sensitive matter." *Plaintiff's Memorandum in Support of Motion to Proceed Anonymously at 4*. Defendant has no objection to Plaintiff proceeding pursuant to a pseudonym. Indeed, its discipline of students is largely confidential and it feels strongly that confidentiality concerns are especially paramount in a case like this. What Defendant finds appalling though is that Plaintiff's counsel names the female student repeatedly and gratuitously throughout his Complaint. This student is 18 years old and alleges she has been sexually assaulted. He does not stop there and includes entirely needless allegations about her sexual interactions with another student which are in no way relevant to this case. *See Plaintiff's Complaint at Paragraph 25*. In addition, it bears noting that prior to even providing Lynn University with a courtesy copy of this lawsuit, Plaintiff's counsel submitted the Complaint to various media outlets. Suffice it to say that this conduct by Plaintiff's counsel is hypocritical, unseemly, and unfortunate. Throughout this Memorandum, the female student who alleged Plaintiff engaged in sexual misconduct will be identified by Defendant as "Jane Doe."

[2] Plaintiff's Complaint at Paragraph 22.

description provided to the police department, the police were able to identify Plaintiff as the alleged assailant. Plaintiff had what he claims was "consensual sex" with Jane Doe almost immediately after spotting her.[3] This was the first time the two had even met. To date, the investigation by the police department has not led to a criminal prosecution of Plaintiff.

In addition to triggering a law enforcement investigation, Jane Doe's complaint also triggered a separate institutional obligation on the part of Lynn University to investigate pursuant to its obligations under Title IX of the Education Amendments of 1972[4] and Lynn's Sexual and Gender-Based Misconduct Policy ("Title IX Policy").[5] Like universities around the country, Lynn has been tasked by the Department of Education with taking steps to reduce the rate of sexual violence on campus. The University's Title IX Policy details how the University responds to allegations of sexual misconduct. The document speaks for itself, and it is thorough, comprehensive, thoughtful, and provides ample resources and rights to both complainants and respondents throughout the University's consideration of a complaint. As described in detail below, the University fully complied with its legal obligation under Title IX and its Title IX Policy in investigating Jane Doe's complaint. The University was also exceptionally fair with Plaintiff, providing him with the exact same opportunities to participate in the University's disciplinary process as provided to Jane Doe. It was only after providing Plaintiff with ample opportunities to be heard in the form of an investigation, a disciplinary hearing, and an appeal that the University ultimately concluded that based on a preponderance of the evidence[6], Plaintiff violated the University's disciplinary policies by having sex with Jane Doe while she was incapacitated.

---

[3] Plaintiff's Complaint at Paragraph 16.
[4] 20 U.S.C. §1681 *et seq*.
[5] Plaintiff's Complaint at Paragraph 29.
[6] On April 4, 2011, the Department of Education's Office of Civil Rights (OCR) issued a "Dear Colleague" letter providing institutions covered by Title IX the Department's position on what it expected from institutions in responding to allegations of sexual misconduct between students. With respect to the appropriate standard of proof, OCR was clear: "in order for a school's grievance procedures to be consistent with Title IX standards, the school must

Upset with this end result, Plaintiff filed this lawsuit asking this Court to "reverse the outcome and findings made by Lynn University following Plaintiff's conduct hearing;" "restore Plaintiff's good standing at Lynn University;" "expunge any negative references from Plaintiff's disciplinary record;" "remove the record of Plaintiff's suspension from his education file;" and "permanently destroy any record of Plaintiff's conduct hearing and resulting penalties . . . ." This is an invitation this Court must refuse as Plaintiff has failed to state any viable claim for relief. As this Court is aware, "Courts are generally reluctant to interfere with or substitute their judgment regarding decisions of academic institutions... Such decisions are afforded great deference and are generally not disturbed absent an abuse of discretion."[7] Plaintiff has failed to plead any set of facts indicating that Lynn abused its discretion to discipline one of its students, Plaintiff. All internal investigations of sexual misconduct are difficult and emotional on all sides, and if ever there was an area for courts to be reluctant to interfere with institutional decision-making, this is it. Instead, Plaintiff's lawsuit should be dismissed and Lynn's discipline of Plaintiff should be provided the deference it deserves.

**I.      Summary of Disciplinary Process**

When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Defendant's Motion is based solely on the factual allegations raised in Plaintiff's Complaint.

"On September 25, 2015, Lynn formally informed Plaintiff that he was accused [by Jane Doe] of having engaged in 'Non-Consensual Sexual Intercourse' in violation of Section V(1), (b)"

---

use a preponderance of the evidence standard (*i.e.*, it is more likely than not that sexual harassment or violence occurred)."
[7] *McCawley v. Universidad Carlos Albizu*, 461 F.Supp. 2d 1251, 1257 (S.D. Fla. 2006).

3

of Lynn's Title IX Policy.[8]  Pursuant to the terms of that policy[9], this triggers a meeting with the University's Title IX Coordinator who is charged with determining whether "(a) a Formal Title IX Investigation is warranted to resolve the case; (b) the case can possibly be resolved through Informal Resolution; or (c) no reasonable grounds exist for believing that the conduct at issue constitutes Sexual or Gender-Based Misconduct."[10]  It is undisputed that Lynn's Title IX Coordinator sent both Plaintiff and Jane Doe documentation making plain the procedures the University was going to use as well as providing notice of each party's rights pursuant to Lynn's process.

"If the Title IX Coordinator determines that a formal Title IX Investigation is warranted to resolve a Complaint of Sexual or Gender-Based Misconduct, the Title IX Coordinator will appoint an investigator or an investigative team ("investigator") who has specific training and experience investigating allegations of Sexual and Gender-Based Misconduct."[11]  Throughout the investigation, the parties "have an equal opportunity to present relevant witnesses and evidence to the investigator(s), as well as identify witnesses who may have relevant information."[12]  The Investigator then compiles a report which "includes items such as summaries of all interviews conducted, photographs, and descriptions of relevant evidence, summaries of relevant electronic records, and a detailed report of the events and findings of fact in question."[13]

This report is then forwarded to the University's Title IX Coordinator to "determine whether reasonable grounds exist to believe that the conduct at issue constitutes Sexual or Gender-Based Misconduct."  If the Title IX Coordinator "determines that there are reasonable grounds to

---

[8] Plaintiff's Complaint at Paragraph 31.
[9] This policy was incorporated by reference into Plaintiff's Complaint. See Plaintiff's Complaint at Paragraph 31.  It is attached as Exhibit 1 to this Memorandum.
[10] See Exhibit 1 at page 29.
[11] *Id*. at 30.
[12] *Id*. at 31.
[13] *Id*.

4

believe that the Respondent engaged in Sexual or Gender-Based Misconduct," a formal hearing is conducted.[14]

Here, such an investigation was conducted and reasonable grounds existed to believe Plaintiff violated the Title IX Policy. As a consequence, and approximately two months after it notified Plaintiff that he had been accused of a violation of Lynn's Title IX policy, the University informed Plaintiff in writing that "he had been charged with being involved in non-consensual sexual intercourse with someone that was incapable of consenting due to alcohol . . . ."[15] The University then notified him that a conduct hearing was being scheduled to consider the allegation.[16] That hearing was held on December 11, 2015.

Four days after the conduct hearing, Plaintiff was notified of the findings in writing.[17] Specifically, Director of Student Conduct Laura Matthews determined that Plaintiff had violated the University's Title IX Policy. The rationale for the finding was that "it is likely that as a result of alcohol consumption, the complainant had been unable to fully comprehend what was taking place the night of the incident, and lacked the ability to make rational, reasonable judgments."[18] As required by the Department of Education, this determination was based on a "preponderance of the evidence provided."[19]

In conclusory fashion, Plaintiff's Complaint contends the rationale for the decision "misapplied Lynn's clear standard of 'incapacity' . . . in deciding, incorrectly, that [Jane Doe] was not able to consent to engaging in sexual intercourse with Plaintiff merely because she had been drinking alcoholic beverages on the night in question, without finding that she had been

---

[14] *Id*.
[15] Plaintiff's Complaint at Paragraph 32.
[16] Plaintiff's Complaint at Paragraphs 34 and 37.
[17] Plaintiff's Complaint at Paragraph 38.
[18] Plaintiff's Complaint at Paragraph 38.
[19] *Id*.

5

incapacitated as a result of consuming alcohol."[20] In a word, this is nonsense. Paragraph 33 of Plaintiff's Complaint quotes the definition of "incapacitation" for purposes of the University's Title IX Policy and it "is a state where an individual cannot make an informed and rational decision to engage in sexual activity because she/he lacks conscious knowledge of the nature of the act (e.g., to understand the who, what, when, where, why or how of the sexual interaction) . . . ." Matthews's determination speaks for itself and does not rest on the fact that Jane Doe had "merely . . . been drinking alcoholic beverages on the night in question." Rather, it was because of drinking that "the complainant had been unable to fully comprehend what was taking place the night of the incident, and lacked the ability to make rational, reasonable judgments." This aligns entirely with Lynn's standard for incapacitation. For what it is worth, the rationale is more thoroughly fleshed out in Matthews's determination which relied on (a) testimony and statements from a number of sources that Jane Doe had been drinking heavily throughout the day, (b) Plaintiff's candid admission that he became concerned about the complainant's level of intoxication shortly after engaging in intercourse with her, as she had difficulty dressing, and he expressed this concern to another student later that same evening, and (c) the testimony of several witnesses that Jane Doe was so intoxicated after the intercourse with Plaintiff that she could not walk on her own, had bloodshot eyes, slurred speech, smelled of alcohol, and had trouble walking. Moreover, and as previously noted, when Jane Doe reported the incident to Lynn Campus Safety the next day, she was unaware of the name of the individual or the exact location of the sexual encounter.

In any event, and pursuant to policy, Lynn provided Plaintiff with notice that he could appeal this decision.[21] He elected this option almost a month after the original hearing and secured

---

[20] Plaintiff's Complaint at Paragraph 39.
[21] Plaintiff's Complaint at Paragraph 40.

6

the assistance of an attorney for the appeal.[22]  Pursuant to the University's Title IX Policy, appeals involving student respondents are handled by Lynn's Dean of Students, Gary Martin. Martin met "ex parte" with Plaintiff and his counsel on January 6, 2016 where Plaintiff and Plaintiff's counsel "discuss[ed] the facts of the case for appellate purposes."[23]  Two days later, Martin denied Plaintiff's appeal and affirmed the finding of a policy violation.[24]

## II. Standard of Review

Federal Rule of Civil Procedure 12(b) (6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94. However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id*. Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir.2003).

## III. Plaintiff's Complaint Should Be Dismissed

Plaintiff's lawsuit is based exclusively on Lynn's determination that he violated the University's conduct rules. He asks this Court to overturn Lynn's determination and compel Lynn to reinstate him as a student in good standing at the University (presumably with Jane Doe). He brings one federal claim, namely, that Lynn's handling of the sex assault complaint violated its legal obligations to him under Title IX. He also brings two related state-law claims: that the

---

[22] Plaintiff's Complaint at Paragraph 41.
[23] Plaintiff's Complaint at Paragraph 43.
[24] Plaintiff's Complaint at Paragraph 44.

manner in which Lynn handled this internal disciplinary investigation gives rise to breach of contract and breach of a covenant of good faith and fair dealing claims. As explained in detail below, each cause of action is deficient and this lawsuit should be dismissed.

### A. Plaintiff's Title IX Claim Is Riddled with Problems, But None More Notable Than His Failure to Adequately Plead That He Is A Victim of Sex Discrimination.

Plaintiff's first cause of action is for purported violation of Title IX. It is difficult to decipher this claim; however, Plaintiff appears to be making three substantive arguments (each, as discussed in detail below, is baseless):

1. Lynn is violating Title IX because its "overall sexual misconduct complaint program as applied to Plaintiff's case fails to comply with the [Department of Education's Office of Civil Rights' 2001 Dear Colleague Letter] in several ways . . . ."[25]

2. "[B]y treating [Jane Doe], a female, more favorably than Plaintiff in its disciplinary investigative and adjudicatory process, the defendant Lynn discriminated against Plaintiff because of sex; the discrimination was intentional; and the discrimination was a substantial and/or motivating factor for the defendant's actions."[26]

3. "Lynn engaged in a series of actions that ultimately resulted in Matthews' erroneous finding that Plaintiff had engaged in sexual misconduct. Her decision was the result of intentional discrimination against Plaintiff on the basis of his male gender, in violation of Title IX."[27]

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or

---

[25] Plaintiff's Complaint at Paragraphs 55 – 58.
[26] Plaintiff's Complaint at Paragraph 59.
[27] Plaintiff's Complaint at Paragraph 62.

8

activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a).  Put simply, prohibited discrimination under Title IX occurs when an individual is "subjected to differential treatment . . . on the basis of sex." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).

Regarding Plaintiff's first argument, he incorporates by reference Lynn's Title IX policy.[28] That policy speaks for itself (and is attached as Exhibit 1).  It is thoughtful, thorough, fair, and most importantly for purposes of this Motion, complies in all respects with Title IX, regulations implementing Title IX, as well as regulatory guidance issued by the Office of Civil Rights of the Department of Education in the form of "Dear Colleague" letters regarding Title IX.  In any event, Plaintiff is claiming that the University's violation of Department of Education regulations or "rules" creates a viable cause of action under Title IX.  He is clearly wrong in this respect as there is no private cause of action for violations of Title IX implementing regulations, let alone for violations of Department of Education "Dear Colleague" letters. Although the Department of Education's Office of Civil Rights is authorized to enforce regulations promulgated under Title IX, the Supreme Court has explained that it has "never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements." *Gebser v. Lago Vista Independent School Dist.,* 524 U.S. 274, 292 (1998).  Courts have since affirmed that such regulations are not privately enforceable.  *Doe v. Bradshaw*, No. Civ. A 11-11593, 2013 WL 5236110 at *10 (D.Mass., 2013); *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 758 (E.D. Tenn. 2009); *see also*, Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432, 3434 (Jan. 25, 2007) ("Nothing in this bulletin is intended to indicate that a guidance document can impose a legally binding requirement.")

---

[28] Plaintiff's Complaint at Paragraph 31.

Plaintiff's second argument (*i.e.*, that Defendant treated Jane Doe more favorably than Plaintiff in its disciplinary investigative and adjudicatory process) is baseless for a couple of reasons. First, Plaintiff has failed to plead a single fact where Jane Doe was treated more favorably than he was. Plaintiff's primary contention in this regard is that Lynn "allowed" Jane Doe to have "a private lawyer representing her as her advisor" even though that was not allowed by Lynn's Student Code of Conduct which allows "[o]nly Lynn University professional staff or faculty members" to act as advisors.[29] Of course, Plaintiff was also allowed to have a lawyer represent him as his advisor, an option he elected in his appeal process (although, he decided to use his mother – who was not in the "Lynn University professional staff or faculty" -- during the initial hearing).[30] In other words, to the extent there was a deviation from policy regarding advisors of choice, it was a deviation extended to both Plaintiff and Jane Doe. Moreover, the Title IX Policy governs the specific misconduct at issue here (sexual misconduct) and specifies that "The advisor may be an attorney, retained at the Respondent's own initiative." In addition, both Plaintiff and Jane Doe were informed they could have attorneys as their advisors by the Title IX Coordinator in writing before the University's investigation even began.

Moreover, under any theory, Plaintiff must still allege facts sufficient to conclude that Lynn's conduct was motivated by gender bias. *Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 638. (6th Cir. 2003). Instead, Plaintiff compares apples and oranges. Based on Plaintiff's pleading, at worst, Lynn's actions were biased in favor of alleged victims of sexual misconduct and against students accused of sexual misconduct.[31] *See e.g.*, Plaintiff's Complaint at Paragraph 61 and 65.

---

[29] For what it is worth, to the extent there was a deviation in policy, this deviation was required by a change in the law. Specifically, 2015 amendments to the Violence Against Women Act forbade higher education institutions from "limit[ing] the choice of advisor or presence for either the accuser or the accused in any meeting or institutional disciplinary proceeding . . . ." See 34 CFR 668.46(k)(2)(iii) and (iv).
[30] Plaintiff's Complaint at Paragraphs 40 – 43.
[31] This is not, in fact, true.

However, this is not the same as pleading the requisite gender bias because sexual assault victims can be either male or female. *Sahm v. Miami University*, 110 F.Supp.3d 774 (S.D. Ohio 2015) ("demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students"); *King v. DePauw Univ.*, No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507, at *10 (S.D.Ind. Aug. 22, 2014) (demonstrating a bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused of assault were male); *Haley v. Va. Commonwealth Univ.*, 948 F.Supp. 573, 579 (E.D.Va.1996) (stating that "a bias against people accused of sexual harassment and in favor of victims ... indicate[s] nothing about gender discrimination"); *see also*, *Doe et al v. Cummins et al*, No. 15-cv-00681 (S.D. Ohio Mar. 23, 2016) (granting university's motion to dismiss on Title IX claim brought by student disciplined for violating school sexual misconduct policy); *Bleiler v. College of Holy Cross*, No. 11-11541-DJC, 2013 WL 4714340, at *12 (D.Mass. Aug. 26, 2013), 779*779 appeal filed, No. 13-2245 (1st Cir.).

Plaintiff's third argument (*i.e.*, erroneous outcome) is equally unavailing since he has once again failed to plead requisite facts connecting this "series of actions" to gender bias. It is worth pointing out as an initial matter that many of the actions taken by Lynn which Plaintiff claims are indicative of gender bias complied with Department of Education's 2011 "Dear Colleague" Letter.

In any event, to prevail on an erroneous outcome theory Plaintiff must once again prove that the hearing was flawed *due to his gender*. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir.1994) (reversed on other grounds). Specifically, a plaintiff must allege "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary hearing" as well as "a causal connection between the flawed outcome and gender bias." *Yusuf*, 35

11

F.3d at 715.  Further, "a plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."  *Id*. Examples of these circumstances include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id*.

Here, Plaintiff has fallen well short of the mark.  For starters, Plaintiff has alleged no "particular facts" sufficient to cast doubt on the accuracy of the outcome of the disciplinary hearing.  On this score, Plaintiff seems to rely on the Boca Raton Police Department determination and an argument that Lynn misapplied its standard of "incapacitation" in finding Plaintiff responsible for a policy violation.  Defendant has already pointed out why the latter argument is wrong.  Regarding the former, once again, Plaintiff is comparing apples and oranges.  As Plaintiff acknowledges, the police investigation did not focus on whether Jane Doe had been too intoxicated to consent, it focused on whether Jane Doe "resisted" or said "no."[32]  Indeed, the police department decided not to prosecute Plaintiff for the time being because there was "no evidence of any force, coercion, or resistance."[33]   That is not the issue Lynn was assessing as its Title IX Policy not only prohibits sexual contact when there is force or coercion but also when one of the parties is incapacitated and cannot make an informed and rational decision to engage in sexual activity.  Moreover, and as this Court knows, the standard for a criminal prosecution ("beyond a reasonable doubt") is considerably higher than the preponderance standard Lynn is required to use under Title IX. Even assuming for the sake of argument that Plaintiff alleged "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary hearing," he has wholly failed to plead particular facts demonstrating "a causal connection between the flawed outcome

---

[32] Plaintiff's Complaint at Paragraph 25.
[33] Plaintiff's Complaint at Paragraph 28.

12

and gender bias." There is not a single statement attributed to any participant in the University's disciplinary process suggesting sex played any role whatsoever in the finding against Plaintiff. There is not a single statement attributed to any relevant university official indicating that male students should be treated worse than their female peers. Plaintiff has pled not a single fact suggesting a pattern of decision-making or statistics at Lynn that show the influence of gender.

      Put another way, in order to have a viable cause of action for sex discrimination, Plaintiff has to plead particular facts demonstrating that Lynn not only "got it wrong," but got it wrong because it intentionally discriminated against him on account of his sex. He has fallen well short of the mark here, and his Title IX claim should be dismissed. *See Doe v. University of South Florida Board of Trustees*, No. 15-CV-00682 (M.D. Fla. May 29, 2015) (Plaintiff's allegations that university "historically and systematically renders verdicts against males in sexual assault cases on the basis of sex; male students at USF, like Plaintiff, are discriminated against solely on the basis of sex and are invariably found guilty, regardless of the evidence; and USF violated Title IX in the manner in which it improperly adjudicated the baseless charge of misconduct by Jane Doe" fall "woefully short of alleging a Title IX claim"); *Doe v. University of Massachusetts–Amherst*, 2015 WL 4306521 (D. Mass. 2015) (motion to dismiss Title IX claim filed by disciplined student granted despite plaintiff pleading difficulties getting information in the disciplinary proceeding, deficiencies in the investigation, limits placed on his ability to cross-examine witnesses, the exclusion of some documentary evidence he wished to introduce, the misuse of witness testimony by the hearing board, and conflicts for member of hearing board who heard case. While "[t]aken together, the facts alleged . . . are sufficient to raise at least some questions about the outcome of his disciplinary proceeding [and] may even accurately reflect that the University treated Jane Doe more favorably than Plaintiff during the disciplinary process, they are

13

insufficient to suggest 'that the disparate treatment was because of Plaintiff's sex.'"), *citing*, *Doe v. Columbia Univ.*, No. 14–cv–3773, 2015 WL 1840402 at *12 (S.D.N.Y. Apr. 21, 2015); *Blank v. Knox College*, No. 14-cv-01386 (C.D. Ill. Jan. 26, 2015) (motion to dismiss Title IX claim granted because connection between procedural problems in disciplinary process and sex discrimination was conclusory); *Ludlow v. Northwestern Univ.*, No. 14 C 4614, 2015 WL 508431, at *6–*7 (N.D.Ill. Feb.5, 2015) (dismissing Title IX claim because the plaintiff's allegations that the university's investigation into the sexual harassment complaints against him were flawed and biased were not connected in any way to his gender and were wholly conclusory).

**B.     Fatal To His Breach Of Contract Claim, Plaintiff Fails To Allege A Material Breach.**

Plaintiff's second cause of action is that Defendant "had contractual obligations to the Plaintiff, including under the Student Code of Conduct" and the Title IX Policy which it failed to honor giving rise to a breach of contract claim.

Under Florida law, a plaintiff alleging breach of contract must plead and establish: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). However, the contractual relationship between a student and a private university is unique and courts have held that "contract law" should not be rigidly applied; rather, it should be used as a framework upon which to analyze the problem. *Boehm v. U. of PA School of Vet. Med.,* 573 A.2d 575, 581 (Pa. 1990) (citing *Slaughter v. Brigham Young Univ.,* 514 F.2d 622 (10th Cir. 1975)). "Courts are generally reluctant to interfere with or substitute their judgment regarding decisions of academic institutions... Such decisions are afforded great deference and are generally not disturbed absent an abuse of discretion." *McCawley v. Universidad Carlos Albizu,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). Courts limit their review to determine whether the decision of the university was arbitrary and

capricious. *Id.* In this context, a "decision is arbitrary and capricious only if it is without any discernible rational basis." *Id*. at 1258. "It is not the court's function to decide whether student misbehavior should be punished or to select the appropriate punishment for transgressions of an educational institution's ethical or academic standards." *Id*. Florida courts have held that "as long as the actions of the university have a rational basis, founded on reason and fact, and are not shown to be the product of bias or prejudice, they cannot be considered to be arbitrary or capricious." *Id*.

Here, although Plaintiff has loosely used the term "arbitrary" in his Complaint while describing Defendant's actions, he has plead no facts to advance such a proposition. Indeed, Plaintiff's own facts demonstrate that Defendant's decisions were anything but arbitrary and capricious. In his Complaint, Plaintiff alleges: 1) that he met Jane Doe for the first time at a party where underage drinking occurred; 2) he engaged in intercourse with Jane Doe almost immediately after meeting her; 3) Jane Doe "filed a rape complaint" the following day; 4) Defendant conducted a Student Conduct Hearing relevant to the allegations, wherein evidence (in the form of video and testimony) was presented; and 5) he was found to have violated Defendant's Sexual and Gender-Based Misconduct Policy, which prohibits having nonconsensual sexual intercourse with someone that is incapable of consenting due to alcohol.[34] These allegations unequivocally demonstrate that Defendant's actions were far from arbitrary and capricious and instead were decided upon after a thorough investigation, hearing, and appeal. *McCawley,* 461 F. Supp.2d at 1257.

To the extent that Plaintiff relies on alleged deviations from internal policy during the investigation and hearing phases to substantiate his breach of contract claim, such argument fails. As an initial matter, all of the examples he presents in his Complaint were in conformity with

---

[34] Plaintiff's Complaint at Paragraphs 14, 17, 22, 32, 37, 38.

Defendant's policies. Specifically, Plaintiff alleges that Jane Doe's attorney had "ex parte communications" with the investigators, viewed the video evidence, and interviewed potential witnesses.[35] Tellingly, Plaintiff fails to cite any specific provision of the controlling policy which prohibits such behavior. That is because it does not exist. Plaintiff further alleges that Defendant failed to conduct a "prompt and thorough investigation" of the allegations made against him.[36] However, Plaintiff's own facts state that Defendant notified him of the allegations against him only one week after the incident and began the investigative process which culminated in a comprehensive Student Conduct Hearing less than three months later.[37] Finally, Plaintiff alleges that Defendant violated its policies by suspending him from the baseball team pending the outcome of the Student Conduct Hearing.[38] However, Defendant's Title IX Policy makes clear that interim disciplinary measures may be imposed pending the outcome of a Student Conduct Hearing at the discretion of the investigator.[39] Thus, on the face of the Complaint, no deviations were had and no breach occurred. Nonetheless, even if there were deviations, such deviations are insufficient to constitute a breach. *Sirpal v. University of Miami*, 2011 US Dist. Lexis 80908 (S.D. Fla. 2011) (deviations from policy alone does not validate claim that the university's actions were arbitrary, malicious, or in bad faith).

### C. Plaintiff's Covenant Of Good Faith And Fair Dealing Must Also Be Dismissed.

Similarly, "[i]n order to assert a claim for breach of a duty of good faith and fair dealing, a plaintiff must allege that a specific contractual provision has been breached, causing it damages."

---

[35] Plaintiff's Complaint at Paragraph 35 (b-d).
[36] Plaintiff's Complaint at Paragraph 35 (e).
[37] Plaintiff's Complaint at Paragraphs 31 & 37.
[38] Plaintiff's Complaint at Paragraph 35 (f).
[39] Defendant's Sexual and Gender-Based Misconduct Policy, p.26.

16

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1359 (M.D. Fla. 2007) (citing *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F. 3d 1146, 1151 (11th Cir. 2005)). Additionally, "Florida courts use breach of contract analysis to evaluate claims of . . . breach of the covenant of good faith and fair dealing." *Resnick v. AvMed, Inc.*, 693 F. 3d 1317, 1325 (11th Cir. 2012) (citations omitted).

The implied covenant of good faith is not an abstract and independent cause of action, but must relate to the performance of an express term of a contract. *Hosp. Corp. of America v. Florida Med. Ctr., Inc.*, 710 So.2d 573, 575 (Fla. 4th DCA 1998). *See also Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So.2d 787, 791-792 (Fla. 2d DCA 2005) (dismissing amended complaint that failed to link the implied covenant of good faith to a breach of an express contractual provision). Because Plaintiff's breach of contract claim fails, and because he has failed to link the implied covenant to an express contractual provision, this claim fails also. Plaintiff's claim for breach of the implied duty of good faith and fair dealing fails because the Complaint does not allege any express term of any policy or contract between the parties that Defendant breached. *See Resnick*, 693 F. 3d 1317 at 1329 ("While every contract contains an implied covenant of good faith and fair dealing under Florida law, a breach of this covenant—standing alone—does not create an independent cause of action. The duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.") (internal quotations and citations omitted). Furthermore, "[a] claimant asserting a cause of action for breach of the implied covenant must allege 'a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and

17

disappoints the reasonable expectations of the other party.'" *Id.* (affirming dismissal of plaintiff's breach of implied duty of good faith and fair dealing claim for failure to meet these pleading requirements) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010)). Count III does not contain any such allegations, and thus, must be dismissed on this basis as well.

Dated: July 14, 2016

Respectfully submitted,

s/Candice C. Pinares-Baez
Scott D. Schneider
Louisiana Bar No. 25866
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, Louisiana 70170
Telephone: (504) 522-3303
Facsimile: (504) 529-3850
Email: sschneider@laborlawyers.com

Candice C. Pinares-Baez
Florida. Bar No. 0030545
cpinares-baez@fisherphillips.com
FISHER & PHILLIPS LLP, Suite 800
450 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Telephone: (954) 525-4800
Facsimile: (954) 525-8739

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on **July 14, 2016**, I electronically filed the foregoing **DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW** with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:     s/Candice C. Pinares-Baez
Candice C. Pinares-Baez
Fla. Bar No. 0030545
cpinares-baez@fisherphillips.com
FISHER & PHILLIPS LLP, Suite 800
450 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Telephone:    (954) 525-4800
Facsimile:    (954) 525-8739
*Attorneys for Defendant*

## SERVICE LIST
## United States District Court – Southern District of Florida
## CASE NO. 1:16-CV-80850-RLR

| | |
|---|---|
| Angel Castillo, Jr<br>E-mail: acastillo@dldlawyers.com<br>Frank L. Labrador<br>E-mail:  flabrador@dldlawyers.com<br>Demahy Labrador & Drake, P.A.<br>150 Alhambra Circle, PH<br>Coral Gables, FL 33134<br><br>*Attorneys for Plaintiff* | Scott D. Schneider<br>Louisiana Bar No. 25866<br>FISHER & PHILLIPS LLP<br>201 St. Charles Avenue, Suite 3710<br>New Orleans, Louisiana  70170<br>Telephone:  (504) 522-3303<br>Facsimile:  (504) 529-3850<br>Email:  sschneider@laborlawyers.com<br><br>Candice C. Pinares-Baez<br>Fla. Bar No. 0030545<br>cpinares-baez@fisherphillips.com<br>FISHER & PHILLIPS LLP, Suite 800<br>450 East Las Olas Boulevard<br>Ft. Lauderdale, FL 33301<br>Telephone:     (954) 525-4800<br>Facsimile:      (954) 525-8739<br><br>*Attorneys For Defendant* |