UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:16-CV-80850-ROSENBERG/BRANNON

JOHN DOE,

    Plaintiff,

v.

LYNN UNIVERSITY, INC.,
A Florida not for profit corporation
d/b/a/ Lynn University

    Defendant.
_____/

## ORDER GRANTING DISMISSAL WITHOUT PREJUDICE

### I. INTRODUCTION

John Doe ("Plaintiff") filed suit against Lynn University ("Defendant") alleging that university disciplinary proceedings against him for sexual misconduct violated Title IX's prohibition against discrimination on the basis of gender. DE 1. Defendant now moves to dismiss Plaintiff's Complaint for failure to state a claim. DE 19. Because Plaintiff has not pleaded facts supporting a plausible inference that the alleged discrimination was gender based, Defendant's Motion to Dismiss is granted.

### II. BACKGROUND

Plaintiff is accused of having sexually assaulted a fellow Lynn University student on the night of September 18, 2015. DE 1 at ¶¶ 14-17. That night, Plaintiff—a seventeen year-old freshman—attended a party held in another student's dorm room. *Id.* at ¶ 14. In the hallway just outside of the room, he struck up a conversation with a female classmate.[1] *Id.* at ¶ 15. The

---

[1] The Court notes that although Plaintiff has elected to protect his privacy by adopting the pseudonym John Doe, he has not extended the same privacy to his accuser, who is named throughout the Complaint. *See* DE 1. The Court declines to refer to this non-party by name.

1

Complaint alleges that the two agreed to retreat to Plaintiff's room down the hall. *Id.* at ¶ 16. There, the pair engaged in sexual intercourse. *Id.* at ¶ 17. The Complaint further alleges that the encounter was consensual and that Plaintiff's sexual partner was not perceptibly intoxicated. *Id.* at ¶¶ 17-18.

On September 19, 2015, a rape complaint was filed against Plaintiff with campus security. *Id.* at ¶ 22. That complaint was turned over to the Boca Raton Police Department. *Id.* The Boca Raton police officers who investigated the complaint concluded that there was no evidence of sexual battery. *Id.* at ¶ 28. Criminal charges were not filed against Plaintiff. *Id.*

Defendant informed Plaintiff on September 25, 2015, that he was being charged with having engaged in "Non-Consensual Sexual Intercourse" in violation of Defendant's "Sexual and Gender-Based Misconduct Policy." *Id.* at ¶ 31. On December 4, 2016, Defendant scheduled a hearing on the matter for December 11, 2015. *Id.* at ¶ 34. The Complaint alleges a variety of procedural irregularities in the days preceding the hearing. *Id.* at ¶ 35(a)–(j). For example, the Plaintiff's accuser was permitted to hire a lawyer as her advisor in an alleged violation of a Lynn University policy forbidding students from hiring legal counsel unless "criminal charges are pending or foreseeable." *Id.* at ¶ 35(a). Moreover, that lawyer was purportedly allowed to approach, question, and "very likely coerce" potential witnesses. *Id.* at ¶ 35(d).

The hearing was held on December 11, 2016 before Laura Matthews, the Lynn University Director of Student Conduct and University Standards, and lasted just over two hours. *Id.* at ¶ 37(a). It was allegedly wrought with procedural irregularities. *See id.* at ¶ 37(a)–(j). For example, Ms. Matthews refused to ask questions prepared by Plaintiff, but asked those prepared by his accuser's lawyer. *Id.* at ¶ 37(d). Plaintiff's closing statement was cut short citing a time limitation he was never made aware of; his accuser's, by contrast, was read in full. *Id.* at 37(j).

Moreover, critical evidence was not presented, including the reports of the Boca Raton police officers who, upon investigation, concluded that no sexual assault had occurred. *Id.* at ¶ 37(h).

Four days later, on December 15, 2016, Plaintiff was found guilty of having "engaged in non-consensual sexual intercourse with someone that was incapable of consenting due to alcohol on the evening of September 18, 2015." *Id.* at ¶ 38. The decision was affirmed on appeal to Gary Martin, Lynn University's Dean of Students. *Id.* at ¶ 44. Plaintiff filed this lawsuit on May 27, 2016, alleging that the university disciplinary proceedings against him violated Title IX's prohibition against discrimination on the basis of gender. *See generally* DE 1.

### III.   STANDARD OF REVIEW

Defendant asks the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether this standard is met, the Court must both accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 678-79. But legal conclusions—including those couched as factual allegations—are not entitled to a presumption of truth. *Id.* Ultimately, the inquiry is a context-specific one requiring that the Court draw on its "judicial experience and common sense." *Id.*

### IV.   DISCUSSION

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a).

3

Neither the Supreme Court nor the Eleventh Circuit Court of Appeals has yet set forth a framework for analyzing challenges to university disciplinary proceedings brought under Title IX. Both parties, therefore, cite to the framework established by the Second Circuit Court of Appeals in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).[2]

The Second Circuit held in *Yusuf* that Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.* at 715. The Court identified two general categories of Title IX challenges to university disciplinary proceedings. *Id.* Some plaintiffs allege that, guilt or innocence aside, the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both—these are selective enforcement challenges. *Id.* Other plaintiffs allege that gender bias played a role in the wrongful conviction of an innocent student—these are erroneous outcome challenges. *Id.* Plaintiff's claim here is the latter sort.

*Yusuf* provides that a plaintiff bringing an erroneous outcome challenge must plead two elements: (1) facts sufficient to cast doubt on the accuracy of the proceeding and (2) a causal connection between the flawed outcome and gender bias. *Id.* The issue before the Court is whether Plaintiff has pleaded those elements in a manner sufficient to survive a motion to dismiss. This question has been addressed by only one circuit court of appeal following the Supreme Court's seminal decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Second Circuit took up the question in *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016). This Court is, therefore, guided in its

---

[2] Not only have other courts in this district have looked to *Yusuf*, s*ee, e.g., Doe v. Univ. of S. Fla. Bd. Of Trs.*, No 8:15-cv-682, 2015 WL 3453753, at *4 (M.D. Fla. May 29, 2015), its analysis has also been adopted by other circuit courts, *see, e.g., Mallory v. Ohio University*, 76 F. App'x. 634, 638 (6th Cir. 2003); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961-62 (4th Cir. 1997), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999).

analysis by *Doe*. As discussed below, Plaintiff has sufficiently pleaded the first element of an erroneous outcome claim, but not the second.

It is plain that Plaintiff has pleaded the first element. Factual allegations throughout the Complaint cast doubt on the accuracy of the disciplinary proceedings. For example, Plaintiff alleges that during the hearing Laura Matthews, Lynn's Director of Student Conduct and Community Standards, refused to ask questions prepared by Plaintiff, but asked those prepared by his accuser's counsel. DE 1 at ¶ 37(d). When it came time for closing statements, Plaintiff alleges that his was cut short citing a time limitation he was never made aware of; his accuser's, by contrast, was read in full. *Id.* at ¶ 37(j). Plaintiff also alleges that critical evidence was not presented, including the reports of the Boca Raton police officers who investigated the allegations and concluded that no sexual assault had occurred. *Id.* at ¶ 37(h). The Complaint is replete with other such allegations. *See* DE 1, *passim*. The Court finds that these facts, assumed true, are more than sufficient to support the plausible inference that the disciplinary proceeding against Plaintiff was procedurally flawed.

The focus, therefore, is on the second element: A causal connection between the flawed outcome and gender bias. This element reflects that the discrimination at issue need not only be intentional—it must also be motivated by gender. Therefore, as district courts in this circuit have held: "to establish a gender discrimination claim under Title IX, a plaintiff must allege that the defendant discriminated against him *because of sex*, the discrimination was intentional, and the discrimination was a 'substantial' or 'motivating factor' of the defendant's actions." *Doe v. Univ. of S. Fla. Bd. Of Trs.*, No 8:15-cv-682, 2015 WL 3453753, at *4 (M.D. Fla. May 29, 2015) (emphasis added).

5

At oral argument, Plaintiff's counsel took the position that demonstrating procedural flaws in the university disciplinary proceedings ought to suffice to prove up a causal connection to gender. In *Yusuf*, the Second Circuit looked to the Title VI and Title VII jurisprudence to support its position that "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination" will not do; instead, "a plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715. In light of counsel's argument, it is worth pausing to explore the support for drawing on Title VI and Title VII jurisprudence in interpreting Title IX.

      A.  <u>Origins of the Causal Connection Element</u>

In *Cannon v. University of Chicago*, the Supreme Court noted that "Title IX was patterned after Title VI of the Civil Rights Act of 1964." 441 U.S. 677, 694 (1946). Plain language supports that position. Except for the substitution of the words "basis of sex" for the words "ground of race, color, or national origin," the language of the two statutes is identical. *Id.* at 694 n. 16. And Title IX's provenance reinforces the conclusion that it was enacted to supplement Title VI. *Id.* In 1970, Representative Edith Green of Oregon—who later sponsored Title IX on the House floor—chaired a set of hearings on a bill that would have added the word "sex" to Title VI. *Id.* (citation omitted). Because debate focused on gender discrimination in educational institutions, several witnesses proposed a more focused provision that would run parallel to Title VII. *Id.* (citation omitted). That suggestion later became reality. The proposed bill's sex discrimination provision was incorporated into the House Resolution that was later amended and adopted as the House version of the Education Amendments of 1972. *Id.* (citation omitted). The Eleventh Circuit has recognized, given this close relationship, that Title VI and

Title IX ought to be construed consistently. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169 n.12 ("We construe Titles VI and IX *in pari materia* . . . .").

Title IX is, likewise, related to Title VII. History illustrates that Title IX was enacted to bridge the gap in coverage left by Titles VI and VII. Title VI prohibits race, color, and national origin discrimination by recipients of federal funds. 42 U.S.C. § 2000d. Title VII prohibits employment practices that discriminate because of race, color, sex, national origin, and religion. 42 U.S.C. §§ 2000e. Title IX bridges the divide, prohibiting sex discrimination by schools receiving federal funding.

Accordingly, the Second Circuit's decision to cite Title VII jurisprudence for the proposition that "a plaintiff must [] allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding" is supported. *Yusuf*, 35 F.3d at 715. So is its election to turn to the sorts of factual allegations that suffice to support Title VII claims when assessing claims brought under Title IX. *Id.* Such factual allegations include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* The Court will now address whether the factual allegations in Plaintiff's Complaint suffice to support the plausible inference of a causal connection between Plaintiff's gender and the discrimination he alleges.

B. <u>Whether Plaintiff Pleaded the "Causal Connection" Element</u>

The first issue for consideration is whether allegations of procedural unfairness that disadvantaged Plaintiff, a male, in favor of his accuser, a female, support an inference of gender bias. In *Columbia*, the Second Circuit held that Plaintiff's allegations of procedural unfairness, although sufficient to support an inference of some bias, did not "necessarily relate to bias on account of sex." *Id.* at 8. The same is true here. The Complaint alleges that "[t]he erroneous

7

outcome of the Conduct Hearing *was due to gender bias against plaintiff, as demonstrated by the multiple procedural missteps*." DE 1 at ¶ 64 (emphasis added).[3] But the fact of procedural missteps that happened to disadvantage a male student in favor of a female student do not, standing alone, support the plausible inference that those missteps occurred *because of* the accused student's gender. To conclude as much would be to overlook the fact of same-sex sexual misconduct. The law is crystalline that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (internal citations omitted). More factual support is, therefore, needed.

The Second Circuit cited other allegations in *Doe* as providing "ample plausible support" for the existence of a causal connection between the alleged bias in that case and the plaintiff's gender. 831 F.3d 46, 57 (2nd Cir. 2016). The complaint alleged, for example, that Columbia University was widely criticized by the media and the student body in the period leading up to the disciplinary hearing for failing to "tak[e] seriously the complaints of female students alleging sexual assault by male students." *Id.* It further alleged that Columbia's administration "was cognizant of, and sensitive to, these criticisms, to the point that the President called a university-wide open meeting with the dean to discuss the issue." *Id.* The Second Circuit concluded that "[a]gainst this factual background, it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Id.*

---

3 Relatedly, Plaintiff alleges that "By treating [the accused], a female, more favorably than Plaintiff in its disciplinary investigative and adjudicatory process, the defendant Lynn discriminated against Plaintiff because of sex . . ." DE 1 at 19.

Here, the allegations are far more general. The Complaint draws on the pressures imposed on Defendant by "the recent national media focus on campus sexual misconduct and campus investigation by the Department of Education's Office of Civil Rights." DE 1 at ¶ 61. But it does not allege that any such media attention was focused on Defendant. Nor does it allege that Defendant's student body levied any criticism at its handling of sexual misconduct cases. When asked at oral argument, Plaintiff's counsel stated that he was not aware of any Lynn-specific allegations that could be included in an Amended Complaint.

Plaintiff's counsel contended at oral argument that an allegation regarding the national focus on sexual misconduct ought to suffice to support the causal connection element. The Court acknowledges that before *Doe* (but after *Twombly* and *Iqbal*), a split developed among district courts regarding whether "allegations that a university was influenced by gender bias in light of national and local backlash satisfy the pleading requirements of *Iqbal* and *Twombly*." *Doe v. Regents of the Univ. of California*, 2016 WL 5515711 (C.D. Cal. July 25, 2015). Many of the cases implicated in this split are cited in the parties' motions. But the Court need not delve into that divide because Plaintiff has alleged even less than sufficed in the district court cases that credited such allegations. *Id.* at *5 (listing three exemplary cases in which district courts credited backlash allegations).

In *Wells v. Xavier*, the district court held that Plaintiff's complaint survived a motion to dismiss where it alleged that unfair procedures were imposed "because he was a male accused of sexual assault." 7 F. Supp. 3d 746, 747 (S.D. Ohio 2014). But the plaintiff in *Xavier* alleged that the proceedings against him occurred "in the context of" an OCR investigation into Xavier University for mishandling a case in which a male student was accused of having sexually assaulted two women. *Id.* at 747. This allegation of pressure to convict a male student of sexual

9

misconduct—pressure specific to Xavier University—is quite unlike the general climate of hostility being put forward as sufficient in the instant case. Indeed, the allegations in *Xavier* more closely resemble the university-specific pressure that the Second Circuit credited in *Doe*.

In the other relevant cases, the allegations did not stop with a contention that the universities were influenced by gender bias in light of national or local backlash. Instead, plaintiffs pleaded specific facts supporting a plausible inference that this national backlash resulted in gender-biased disciplinary proceedings. The plaintiffs in *Doe v. Salisbury*, for example, alleged "upon information and belief [that] Defendants' deliberate indifference was taken to demonstrate to the United States Department of Education and/or the general public that Defendants are aggressively disciplining male students accused of sexual assault." 123 F. Supp. 3d 748, 768 (D. Md. 2015). But plaintiffs also alleged the existence of factual support for the position that the university was discriminating on the basis of gender. Specifically, plaintiffs stated upon information and belief that the university "possess[ed] communications evidencing its intent to favor female students alleging sexual assault over male students like plaintiffs who are accused of sexual assault" in the disciplinary process. *Id.*[4]

Here, Plaintiff has made no factual allegations in support of the inference that the national media focus on sexual assault resulted in gender biased disciplinary proceedings. Plaintiff alleges only that national pressure resulted in the "enforcement of guidelines and

---

[4] *Doe v. Brown University*, 166 F. Supp. 3d 177 (D. R.I. 2016) contains similar gender-focused allegations. In *Brown*, the district court noted that it was inclined to view as sufficient allegations that men accused of sexual assault were invariably found guilty because of national pressure. *Id.* at 189. But it went on to note that more was present—namely, several "specific allegations related to gender bias as opposed to bias against students accused of sexual assault." *Id.* Plaintiff, for example, alleged upon information and belief that "Brown's handling of John Doe's case fits within a patterns of showing gender bias toward female students in cases of sexual misconduct, including its conduct in: (i) *McCormick v. Dresdale*, *supra*; (ii) A sexual misconduct case against former Brown student Adam Lack (Class of 1997); and (iii) other instances documented in the *Brown Daily Herald* (April 29, 2010) and the *Brown Spectator* (May 26, 2012)." *Id.*

10

regulations that are unfair and imbalanced to male students while unduly favoring female students." DE 1 at 60. But apart from allegations of procedural unfairness in *this case*—which the Court has already noted are insufficient—Plaintiff has not put forward any facts supporting the conclusion that Defendant's "guidelines and regulations" are biased against male students and in favor of female students. The Court acknowledges the difficulties of plausibly pleading gender bias absent "smoking gun" evidence like gender-biased statements. But, given *Twombly* and *Iqbal*, Plaintiff's claim must fail absent factual allegations sufficient to support the plausible inference that he was discriminated against on the basis of his gender.

## V.    CONCLUSION

Because Plaintiff has failed to allege that the discrimination he suffered was motivated by his gender, the Motion to Dismiss is **GRANTED** as to Plaintiff's Title IX claim, which is hereby **DISMISSED** for failure to state a claim. In light of the fact that Plaintiff has not stated a claim under Title IX, the Court declines to exercise supplemental jurisdiction to consider whether Plaintiff has properly pleaded its state law claims. This dismissal is, however, **WITHOUT PREJUDICE** for Plaintiff to amend his pleadings on or before November 30, 2016, in light of the rule that amendment is to be liberally permitted.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 23rd day of November, 2016.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE