UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

West Palm Beach Division
CASE NO. 9:16-CV-80850-ROSENBERG/BRANNON

JOHN DOE,

      Plaintiff,

v.

LYNN UNIVERSITY, INC.,
a Florida not for profit corporation
d/b/a Lynn University,

      Defendants.

_____/

## NON-PARTY MARY ROE'S MOTION FOR PROTECTIVE ORDER

Mary Roe ("Roe"), by and through her undersigned counsel, pursuant to Rule 26(c), Federal Rules of Civil Procedure, files this motion for protective order to prevent the taking of her deposition in this case.[1]  Alternatively, she seeks the imposition of restrictions as to the method of taking the deposition and the areas of inquiry.

**Factual Background**

Roe is the victim of rape.  The rapist is the plaintiff in this action.  Roe is not a party to this action.

At the time of the rape, both Plaintiff and Roe were students at Lynn University ("Lynn").  After Plaintiff reported the rape to Lynn, it conducted an investigation and a conduct hearing, and imposed sanctions against Plaintiff.[2]  As a result of the sanctions imposed against him by Lynn, Plaintiff filed this suit against Lynn, alleging violations of Title IX, breach of

---

[1] Plaintiff caused a subpoena to be served upon Roe on December 6, 2016, then agreed to change the date, but has indicated an intention to take the deposition before the discovery cutoff date of January 13, 2017.

[2] The allegations in the Amended Complaint relating to the night of the rape and Roe's condition are false, but since this case involves issues such as the sufficiency of Lynn's investigation, and its motivation – and not whether the rape occurred – Roe will not address those allegations.

contract, and breach of implied duty of good faith.  The only parties to this action are the plaintiff and Lynn.  The only issues in this case are whether Lynn violated Title IX or breached a contract with Plaintiff.  By order dated November 23, 2016 (the "Order"), the initial complaint was dismissed for failure to state a claim [D.E. 45].  A motion to dismiss the Amended Complaint is pending [D.E. 57].

Since the rape, Roe has quit school and returned to her parents' home in Massachusetts. A deposition will have a devastating effect on her health as explained below.  She therefore seeks the protection of this Court in order to prevent her from being subjected to the intolerable stress of a deposition for the following reasons:

a.       Roe had to leave Lynn and the state of Florida, is under psychiatric and neurological care as a result of epilepsy and anxiety exacerbated by the rape, and  would   likely suffer further, serious injury were she required to be deposed;

b.       The claims are based upon the procedures followed by Lynn, and the motivations of the university.  Roe can offer no evidence in this regard;

c.       Plaintiff does not require the deposition of Roe as any relevant evidence which Roe could offer could be proffered through testimony of others or through  documentary evidence;

d.       There is a motion to dismiss pending which, if granted, would render the need for the deposition absolutely moot;

e.       The trial of this action is scheduled for May 30, 2017 [D.E. 6].

**Motion for Protective Order**

Rule 26(c)(1) allows for a protective order precluding any type of discovery "for good cause shown."  A court must balance the competing factors involved in determining whether to

issue a protective order.  Dunford v. Rolly Marine Serv. Co., 233 F.R.D. 635, 636 (S.D. Fla. 2005).  This Court must therefore weigh the Plaintiff's right to obtain information relevant to his case with Roe's serious health issues, the importance of her testimony to the case, and the ability of Plaintiff to obtain the same information elsewhere.  See, e.g., Baratta v. Homeland Housewares, LLC, 242 F.R.D. 641 (S.D. Fla. 2007) ("For 'good cause' shown the Court may issue a protective order preventing a deposition;"  a court should balance the non-moving party's interest  against the moving party's proffer; id. at 642).

The fact that Roe is not a party to this suit must also be considered.  Cytodyne Techs., Inc. v. Biogenic Techs., Inc., 216 F.R.D. 533  (M.D. Fla. 2003) ("The limited case law in this area reveals a case-specific balancing test wherein the court must weigh factors such as relevance, the need of the party for the documents,  . . . against the burden imposed on the person ordered to produce the desired information." Id. at 535.), citing Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163 (E.D.N.Y.1988); ("non-party status is a significant factor in determining whether discovery is unduly burdensome;" id. at 179).

**Roe's Health Prevents her From Being Deposed**

Roe has suffered from Juvenile Myoclonic Epilepsy for years, meaning that she is subject to grand mal seizures at any time.  These seizures have severe repercussions, including concussions, emergency room treatment, hospitalizations, and the inability to drive for six months following each seizure.  Anxiety and stress are primary factors in causing seizures.  For example, as reflected in the letter from one of her treating doctors, Dr. Elizabeth A. Thiele, dated December 19, 2016, attached hereto as Exhibit "A", in the four years between September 2011 and September 2015, Roe had four such seizures.  In the nine months immediately following the rape, she had eight seizures – twice the number she had in the preceding four years combined.

Roe was placed on anti-anxiety/anti-depression medication in July, 2016, and is being regularly treated by two therapists, as well as a psychiatrist.  However, upon receiving the subpoena in this case, nightmares from which she had previously suffered returned, and her stress levels have escalated.  See, letter from Dr. Lawrence Selter, Roe's treating psychiatrist, dated December 21, 2016, a copy of which is attached hereto as Exhibit "B".

As indicated by Dr. Thiele, the pediatric epilepsy program director of Massachusetts General Hospital who is treating Roe, "it would be extremely detrimental to both Erin's physical and mental health for her to be deposed at this time by any lawyer regarding the assault."  Ex. A.

The medical condition of Roe therefore requires a protective order prohibiting her from being deposed in this case.  "One of those rare circumstances that may preclude the taking of a deposition altogether is the medical incapacity of a witness to attend and sit through a deposition."  Dunford at 637 (prohibiting the deposition of the sole shareholder/officer of the defendant corporation while recognizing that the burden of precluding a deposition is a "heavy one").[3]

**Testimony Unnecessary**

Title IX prohibits discrimination on the basis of sex within any educational program receiving Federal financial assistance.  20 U.S.C. §1681(a). In order to prevail – or even to withstand the motion to dismiss – Plaintiff must be able to allege that Lynn intentionally discriminated against him because of sex, and that the discrimination was a "substantial" or "motivating" factor of Lynn's actions.  Order, at 5.

Plaintiff alleges that Lynn discriminated against Plaintiff on the basis of his gender by:

    a.     Allowing Roe to have a private lawyer represent her;
    b.     Allowing ex-parte communications between Roe's lawyer and the investigators;

---

[3] To the extent that additional, sworn evidence is required, Roe requests additional time to obtain same.

> c. Allowing Roe's lawyer to view videos;
> d. Allowing Roe's lawyer to question witnesses;
> e. Violating his rights under Lynn's misconduct policy by not conducting a thorough investigation of the allegations; and
> f. Suspending Plaintiff from the baseball team at the insistence of Roe's lawyer.

Amended Complaint, ¶47.

Plaintiff further alleges that Lynn discriminated against him during the conduct hearing itself by:

> a. Advising witnesses that they would not be punished for violating the school's underage drinking prohibition;
> b. Allowing Roe's attorney to participate other than as a silent observer;
> c. Allowing unsworn, unqualified and telephonic testimony and hearsay without the ability to cross-examine;
> d. Refusing to ask questions submitted by Plaintiff while asking the questions prepared by Roe's attorney;
> e. Improperly allowing unqualified lay students, instead of experts, to opine as to Roe's intoxication;
> f. Failing to call as witnesses the Boca Raton police officers who had determined not to prosecute Plaintiff, and failing to consider their reports;
> g. Failing to consider the testimony or evidence of the sexual assault care center where Roe was treated;
> h. Allowing Roe to read a closing statement but prohibiting Plaintiff from reading his entire closing statement.

Amended Complaint, ¶49.

In order to prove discrimination based upon gender, Plaintiff also included many allegations relating to the policy behind Title IX and the pressure imposed upon Lynn to enforce Title IX (i.e., ¶¶11 – 23)[4]. He argues that Lynn misapplied its "clear standard of incapacity," (¶51) and violated compliance standards set by the Office for Civil Rights. Amended Complaint ¶66. Roe is blatantly unqualified to testify as to any of these material issues.

Therefore, even a cursory review of the basis of Plaintiff's claims reflects that the testimony of Roe is not necessary. The issues as pled revolve around Lynn's alleged failure to

---

[4] Paranthetical paragraph numbers refer to those in the Amended Complaint.

conduct an adequate investigation; refusal to provide Plaintiff with due process; focus on the concerns of the female student to the exclusion of those of the male student; and imposition of discipline using gender as a motivating factor. Amended Complaint ¶1. Roe's testimony is not only unnecessary for a trial of these issues; it is largely inadmissible.

The relevant information concerning the adequacy of the investigation about which Roe could testify is limited to the substance of her communications with the Lynn investigators. That information should be obtained through Lynn. To the extent that Plaintiff contends that Lynn did not consider other, contradictory evidence which existed, Plaintiff can obtain that evidence through the other sources (i.e. the videotapes mentioned in the complaint, the police officers and their records, and statements of witnesses). In short, Roe's testimony about what happened that night is not required for a determination of whether Lynn followed appropriate guidelines and procedures in conducting its investigation, or a determination of whether Lynn breached any contractual obligation with Plaintiff.

The irrelevance of Roe's testimony is perhaps made most apparent by the fact that Lynn does not intend to call her as a witness at the trial.[5]

**Other Sources of Information/Duplicative Information**

The Court "must" limit the extent of discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" if the party seeking discovery has "had ample opportunity to obtain the information by discovery in the action;" or if the proposed discovery is outside the permissible scope. Fed. R. Civ. P. 26(b)(2)(C). As seen by the Amended Complaint, not only are there other sources for the relevant information, but there are much better sources.

---

[5] As counsel for Lynn has advised the undersigned.

Roe's attorney, for example, would be a preferable source of information relating to the allegations that Lynn allowed Roe to have a private lawyer represent her; allowed ex-parte communications between Roe's lawyer and the investigators; allowed Roe's lawyer to view videos; and insisted that Plaintiff be suspended from the baseball team.  Amended Complaint, ¶47 (a-d; f).

Similarly, Lynn's representative would have superior knowledge about the allegations relating to its policies and the thoroughness of its investigation.  Amended Complaint  ¶47(e).

The alleged indicia of discrimination pled by Plaintiff does not involve conduct of Roe, or even personal knowledge which she would have.  Anything which Roe learned about her attorney's conduct would be privileged; if Plaintiff wants information about Roe's attorney's conduct, he will have to depose her or the people with whom she interacted.  In fact, Plaintiff has scheduled the deposition of Roe's attorney for January 12, 2017.

Nor would Roe have personal knowledge of Lynn's investigation or motives, or be qualified to testify as to whether the university violated any of its own policies.  The only testimony which she could offer in this regard would be what questions Lynn's investigator asked her – information just as easily obtained from Lynn's employees and records.

The alleged discrimination which occurred during the hearing itself can also be better elicited through other sources. The hearing officer, Plaintiff, Plaintiff's mother, and Roe's attorney, as well as other witnesses who testified at the hearing, can offer evidence about what was or was not said at the hearing, including whether the hearing officer advised witnesses that they would not be punished for violating the school's underage drinking prohibition,  allowed Roe's attorney to participate other than as a silent observer, allowed improper testimony, restricted the ability to cross-examine the witnesses, refused to ask questions submitted by

Plaintiff while asking the questions prepared by Roe's attorney, allowed unqualified lay students, instead of experts, to opine as to Roe's intoxication, failed to call as witnesses the police officers and sexual unit employees who had met with Roe after the rape, failed to consider police reports, or allowed Roe to read a closing statement but prohibited Plaintiff from reading his entire closing statement. Amended Complaint, ¶49.

In addition, there are a plethora of other sources for the information which could be elicited by Roe's deposition. The Amended Complaint itself references evidence which can be obtained by campus surveillance videos (¶ 33, 34), the video recording of Roe's interview with the police (¶ 36), the police report (¶37, 38), the police, employees of the sexual assault care center, campus security (¶¶ 36 - 38), Lynn's Director of Student Conduct (¶ 3), Lynn's Dean of Students (¶ 3), and every other person involved in Lynn's investigation or present during any part of the hearing (¶ 47d). Furthermore, Roe's closing statement was typed out (¶ 49f), as were questions asked of her. Amended Complaint ¶ 47d. Presumably, these written documents are available for production and would reveal both Roe's testimony and her closing statement during the hearing. Upon information and belief, witnesses also provided statements, and Lynn would have its own investigative file, which could offer much more complete information relating to its investigation than could the testimony of Roe.

All of these sources of other information provide additional grounds for the issuance of the protective order. See, e.g., Insituform Techs., Inc. v. Cat Contracting, Inc., 914 F. Supp. 286, 287 (N.D. Ill. 1996) (granting a nonparty's motion to quash a subpoena because the information requested was "unreasonably cumulative [and] duplicative," because there was ample opportunity to obtain it from others, and because the evidence was more relevant to the potential liability of the nonparty than to the issues in the pending lawsuit.)

Not only are there other, better sources of information, but Plaintiff has had ample opportunity to obtain the information. This case has been pending since May 27, 2016. Plaintiff waited until two days before the initial discovery cut off of December 30, 2016 to schedule Roe's deposition for December 28. As reflected in the Amended Complaint itself, Plaintiff has had the names of witnesses, and knowledge of tangible evidence, since before filing suit. The evidence sought from Roe could have been obtained from the other sources months ago.

**Pending Motion to Dismiss**

This Court has already dismissed Plaintiff's first attempt to state a cause of action, stating that "Plaintiff's claim must fail absent factual allegations sufficient to support the plausible inference that he was discriminated against on the basis of his gender." Order, at 11. As reflected in the Motion to Dismiss the Amended Complaint which is pending, Plaintiff still fails to maintain a cause of action. Roe's deposition, therefore, may never have to take place, especially since, as recognized by this Court, there are difficulties in "plausibly pleading gender bias absent 'smoking gun' evidence like gender-biased statements." Order, at 11. There is no need whatsoever to put Roe through the deposition unless and until Plaintiff can even withstand a motion to dismiss. Scroggins v. Air Cargo, Inc., 534 F.2d 1124 (5th Cir. 1976) (" . . .we see no possible abuse of discretion in the order staying general discovery until the court could determine whether the case would be resolved at the summary judgment stage;" id. at 1133); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550 (11th Cir. 1985) ("a magistrate has broad discretion to stay discovery pending decision on a dispositive motion;" id. at 1560); Johnson v. New York Univ. Sch. of Educ., 205 F.R.D. 433 (S.D.N.Y. 2002) (granting a motion to stay discovery pending resolution of a motion to dismiss because the motion was "potentially dispositive and [did] not appear to be unfounded in the law," because the plaintiff wouldn't be prejudiced by the

stay,  and "because the adjudication of the pending motion to dismiss may obviate the need for burdensome discovery;" id. at 434).[6]

**Restrictions on Discovery**

This Court may also enter any order necessary to prevent the damage which a typical deposition would cause to Roe.  Fed. R. Civ. P. 26 (c)(1).  Should this Court determine that Roe is subject to discovery in this case, she requests whatever such relief the Court deems appropriate, including, but not limited to: (a) eliciting information from her through written questions rather than an oral deposition; or, if a deposition is permitted, (b) allowing only Plaintiff's attorney to be present on behalf of Plaintiff; (b) allowing Roe's parents to be present; (c) requiring the questions to be submitted to the magistrate for approval in advance; (d) requiring the questions to be limited only to what knowledge, if any, Roe has about Lynn's investigation; (e) restricting the questions to only what information Roe conveyed to Lynn, and what information Lynn requested of Roe; (f) prohibiting any questions about the night of the rape, the days surrounding the rape, or her sexual history; (f) allowing the deposition only after the determination of the motion to dismiss, and only if the motion to dismiss is denied in full; and (g) restricting the deposition to one (1) hour, with breaks as necessary.

**Conclusion**

The deposition of Mary Roe should not be permitted to take place because (1) she is a nonparty (2) whose mental and physical health will be severely jeopardized by the anticipation of, and attendance at, the deposition; (3) the relevant information which she could offer would be duplicative of evidence elicited through other sources; (4) the evidence which she could offer is not necessary for a determination of the adequacy of Lynn's investigation or its motives; or the

---

[6] Since the trial of this case is not until May 2017, this Court could extend the discovery deadline for Roe's deposition only, in the event that it denies the motion to dismiss.

fairness of the investigative process; (5) the deposition can be avoided totally if the motion to dismiss is granted, (6) there is no prejudice to Plaintiff since Lynn is not going to call Roe as a witness; and (7) the trial is not until May, allowing additional time for determination of the motion to dismiss and additional healing of Roe.

WHEREFORE, Mary Roe requests the entry of a protective order precluding Plaintiff from taking her deposition in this case.  Alternatively, Roe requests a stay of the deposition unless and until the motion to dismiss is denied, and the imposition of the most protective guidelines possible so as to avoid and minimize a further exacerbation of her serious medical condition.

Undersigned counsel certifies that he has communicated with Plaintiff's counsel in an attempt to resolve the issues raised in this motion but has been unable to do so.

**HAILE, SHAW & PFAFFENBERGER, P.A.**
660 U.S. Highway One, Third Floor
North Palm Beach, FL  33408
Phone: (561) 627-8100
Fax: (561) 622-7603
gwoodfield@haileshaw.com
bpetroni@haileshaw.com


By: /s/  Gary A. Woodfield
        Gary A. Woodfield, Esq.
        FL Bar No. 563102

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of December, 2016, the foregoing document is being served on the parties on the attached service list in the manner specified via transmission of Notice of Electronic filing generated by CM/ECF.

/s/    Gary Woodfield
Gary Woodfield

## SERVICE LIST

Angel Castillo, Jr., Esq.
Frank L. Babrador, Esq.
Demahy Labrador Drake Victor Rojas & Cabeza
806 Douglas Road, 12th Floor
Coral Gables, FL  33134
acastillo@dldlawyers.com
flabrador@dldlawyers.com
yvette@dldlawyers.com
Maricela@dldlawyers.com

Scott D. Schneider, Esq.
Fisher & Phillips LLP
201 St. Charles Avenue, Suite 3701
New Orleans, LA 70170
sschneider@fisherphillips.com

Candice C. Pinares-Baez, Esq.
Fisher & Phillips LLP
450 East Laws Olas Blvd., Suite 800
Fort Lauderdale, FL  33301
cpinares-baez@laborlawyers.com

Jonathan Etra, Esq.
BROAD AND CASSEL
One Biscayne Tower, 21st Floor
2 South Biscayne Blvd.
Miami, FL  33131
Phone (305) 373-9400
jetra@broadandcassel.com

M371.001/00451720 v1                                    12