UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:16-CV-80850-ROSENBERG/BRANNON

JOHN DOE,

    Plaintiff,

v.

LYNN UNIVERSITY, INC.,
A Florida not for profit corporation
d/b/a Lynn University,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.    INTRODUCTION**

John Doe ("Plaintiff") filed suit against Lynn University ("Defendant") alleging that university disciplinary proceedings against him for sexual misconduct violated Title IX's prohibition against discrimination on the basis of gender. DE 1. Plaintiff also brought state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* Defendant moved to dismiss Plaintiff's Complaint for failure to state a claim. DE 19. Defendant's Motion to Dismiss was granted because Plaintiff had not pleaded facts supporting a plausible inference that the alleged discrimination was gender based. DE 45.[1] Plaintiff filed an Amended Complaint. DE 47. Defendant again moved to dismiss. DE 57. Defendant has now pleaded facts supporting a plausible inference that the alleged discrimination was gender based and sufficiently pleaded his two state law claims. The Court, therefore, denies Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

---

[1] The Court declined to exercise supplemental jurisdiction over the state law claims. DE 45.

## II.     BACKGROUND

Plaintiff is accused of having sexually assaulted a fellow Lynn University student on the night of September 18, 2015. DE 1 at ¶¶ 28-30. That night, Plaintiff—a 17 year-old freshman—attended a party held in another student's dorm room. *Id.* at ¶ 28. In the hallway just outside of the room, he struck up a conversation with a female classmate. *Id.* at ¶ 29. The Complaint alleges that the two agreed to retreat to Plaintiff's room down the hall. *Id.* at ¶ 30. There, the pair engaged in sexual intercourse. *Id.* at ¶ 31. The Complaint further alleges that the encounter was consensual and that Plaintiff's sexual partner was not perceptibly intoxicated. *Id.* at ¶¶ 31-32.

On September 19, 2015, a rape complaint was filed against Plaintiff with campus security. *Id.* at ¶ 35. That complaint was turned over to the Boca Raton Police Department. *Id.* The Boca Raton police officers who investigated the complaint concluded that there was no evidence of sexual battery. *Id.* at ¶ 40. Criminal charges were not filed against Plaintiff. *Id.*

Defendant informed Plaintiff on September 25, 2015, that he was being charged with having engaged in "Non-Consensual Sexual Intercourse" in violation of Defendant's "Sexual and Gender-Based Misconduct Policy." *Id.* at ¶ 43. On December 4, 2015, Defendant scheduled a hearing on the matter for December 11, 2015. *Id.* at ¶ 46. The Complaint alleges a variety of procedural irregularities in the days preceding the hearing. *Id.* at ¶ 47(a)–(f). For example, the Plaintiff's accuser was permitted to hire a lawyer as her advisor in an alleged violation of a Lynn University policy forbidding students from hiring legal counsel unless "criminal charges are pending or foreseeable." *Id.* at ¶ 47(a). Moreover, that lawyer was purportedly allowed to approach, question, and "very likely coerce" potential witnesses. *Id.* at ¶ 47(d).

The hearing was held on December 11, 2016 before Laura Matthews, the Lynn University Director of Student Conduct and University Standards, and lasted just over two hours.

*Id.* at ¶ 49(a). It was allegedly wrought with procedural irregularities. *See id.* at ¶ 49(a)–(j). For example, Ms. Matthews refused to ask questions prepared by Plaintiff, but asked those prepared by his accuser's lawyer. *Id.* at ¶ 49(d). Plaintiff's closing statement was cut short citing a time limitation he was never made aware of; his accuser's, by contrast, was read in full. *Id.* at 49(j). Moreover, critical evidence was not presented, including the reports of the Boca Raton police officers who, upon investigation, concluded that no sexual assault had occurred. *Id*. at ¶ 49(h).

Four days later, on December 15, 2016, Plaintiff was found guilty of having "engaged in non-consensual sexual intercourse with someone that was incapable of consenting due to alcohol on the evening of September 18, 2015." *Id.* at ¶ 50. The decision was affirmed on appeal to Gary Martin, Lynn University's Dean of Students. *Id.* at ¶ 56. Plaintiff filed this lawsuit on May 27, 2016, alleging that the university disciplinary proceedings against him violated Title IX's prohibition against discrimination on the basis of gender. *See generally* DE 1.

### III.    STANDARD OF REVIEW

Defendant asks the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether this standard is met, the Court must both accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 678-79. But legal conclusions—including those couched as factual allegations—are not entitled to a presumption

3

of truth. *Id.* Ultimately, the inquiry is a context-specific one requiring that the Court draw on its "judicial experience and common sense." *Id.*

**IV.   DISCUSSION**

    A.  <u>Whether Plaintiff Has Pleaded A Title IX Claim</u>.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a). Because neither the Supreme Court nor the Eleventh Circuit Court of Appeals has yet set forth a framework for analyzing challenges to university disciplinary proceedings brought under Title IX, this Court reasoned in its Order Granting Dismissal Without Prejudice that it was appropriate to apply the framework established by the Second Circuit Court of Appeals in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994). DE 45.[2]

The Second Circuit held in *Yusuf* that Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.* at 715. The Court identified two general categories of Title IX challenges to university disciplinary proceedings. *Id.* Some plaintiffs allege that, guilt or innocence aside, the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both—these are selective enforcement challenges. *Id.* Other plaintiffs allege that gender bias played a role in the wrongful

---

[2] Both parties have cited to this standard. And not only have other district courts in this circuit looked to *Yusuf*, s*ee, e.g.*, *Doe v. Univ. of S. Fla. Bd. Of Trs.*, No 8:15-cv-682, 2015 WL 3453753, at *4 (M.D. Fla. May 29, 2015), its analysis has also been employed by several circuit courts of appeal, *see, e.g.*, *Doe v. Cummins*, No. 16-3334, 2016 WL 7093996 (6th Cir. Dec. 6, 2016); *Mallory v. Ohio University*, 76 F. App'x. 634, 638 (6th Cir. 2003); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961-62 (4th Cir. 1997), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999).

conviction of an innocent student—these are erroneous outcome challenges. *Id.* Plaintiff's claim here, as the Court noted in its earlier Order, is the latter sort.

*Yusuf* provides that a plaintiff bringing an erroneous outcome challenge must plead two elements: (1) facts sufficient to cast doubt on the accuracy of the proceeding and (2) a causal connection between the flawed outcome and gender bias. *Id.* The issue before the Court (once again) is whether Plaintiff has pleaded those elements in a manner sufficient to survive a motion to dismiss. This question has now been addressed by two circuit courts of appeal following the Supreme Court's seminal decisions in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Second Circuit took up the question in *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016). The Sixth Circuit did the same in *Doe v. Cummins*, No. 16-3334, 2016 WL 7093996 (6th Cir. Dec. 6, 2016). This Court is, therefore, guided in its analysis by the *Columbia* and *Cummins* opinions.

As discussed in the Order Granting Dismissal Without Prejudice, Plaintiff sufficiently pleaded the first element in his initial Complaint. DE 45. "Factual allegations throughout the Complaint cast doubt on the accuracy of the disciplinary proceedings." *Id.* (discussing several such allegations). And this Court found that those allegations, assumed true, were "more than sufficient to support the plausible inference that the disciplinary proceeding against Plaintiff was procedurally flawed." *Id.* This Court concluded, however, that Plaintiff had not sufficiently pleaded the second element: A causal connection between the flawed outcome and gender bias. The Court, confronted with the question of whether Plaintiff's Amended Complaint suffers the same ill, finds that it does not.

In *Columbia*, the Second Circuit credited university-specific allegations of pressure to convict male students of sexual assault. In assessing the university-specific allegations contained

in Plaintiff's Amended Complaint, the Court is guided by the Second Circuit's analysis. The Second Circuit examined two sorts of allegations in determining whether the university-specific allegations in *Columbia* sufficed to make out the required causal connection between the flawed outcome and gender bias: (i) allegations of criticism directed at Defendant for its handling of sexual assault complaints made by female students against males and (ii) allegations that Defendant was cognizant of that criticism.

Addressing allegations in the first category, the opinion in *Columbia* emphasized that "during the period preceding the disciplinary hearing, there was substantial[3] criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students." 831 F.3d 46, 57 (2nd Cir. 2016). The specific supporting facts included articles in the New York Post and in an independent, student-run newspaper, as well as critiques lodged by "various student organizations." *Id.* at 50-51. Addressing allegations in the second category, the opinion noted that "the University's administration was cognizant of, and sensitive to, these criticisms . . ." *Id.* The specific facts supporting this allegation included the Columbia University President having scheduled a university-wide Town Hall meeting on the school's handling of sexual misconduct that the Dean was scheduled to attend. *Id.* at 50.

Importantly, the Second Circuit characterized the allegations in *Columbia* as providing "ample plausible support" for the existence of a causal connection between the bias acts alleged and the plaintiff's gender. 831 F.3d 46, 57 (2nd Cir. 2016). Having examined both (i) allegations

---

[3] Plaintiff makes much of the word "substantial." *See* DE 57 at 7. The Court does not. To take the existence of "substantial criticism" as a requirement would be to ignore the Second Circuit's characterization of the plausible support for gender bias in that case as "ample." 831 F.3d 46, 57 (2nd Cir. 2016). Substantial criticism is certainly preferable, but it is not necessary to nudge Plaintiff's Amended Complaint across the line that differentiates the plausible from the possible.

of criticism directed at Defendant for its handling of sexual assault complaints made by female students against males and (ii) allegations that Defendant was cognizant of that criticism, the Court finds that such allegations, while not similarly "ample," are present here. *Id.* That is sufficient to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," which is all the law requires. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

First, Plaintiff alleges that Defendant was criticized during the period preceding Plaintiff's disciplinary proceeding for failing to take seriously complaints by female students alleging sexual assault by males. In support of that allegation, Plaintiff cites a news media report that school security chose[4] not to press charges against a young male perpetrator[5] accused of having sexually harassed four female students on Lynn University's campus during February 2015, despite the fact that two of the female students desired to do so. DE 47 at ¶ 17.[6] Plaintiff contends that the news media report generated pressure from the parents of Defendant's female students and from the public in Boca Raton for Defendant to take "action against the next male student accused of sexual battery by a female student." *Id.* Plaintiff was the first male student against whom a sexual assault complaint was filed during the 2015-2016 school year. *Id.* at 20.

Plaintiff has also alleged that Defendant's administrators were cognizant of that pressure from both the public and the parents of female students. Specifically, Plaintiff alleges that "[a]s a

---

[4] Defendant asks us to consider that this is a decision for the police (not Defendant) to make. But because this is the motion to dismiss stage, the Court must assume the truth of Plaintiff's factual allegation, which is that school security chose not to press charges.

[5] Defendant argues that because the male perpetrator was not a student, this is "obviously an apples and oranges comparison." DE 57 at 8. But there is nothing implausible about the handling of a sexual complaint against a male non-student generating pressure to take action against male students accused of similar offenses. And that is precisely what is alleged.

[6] Plaintiff also cites the fact that "[a]t least six instances of criminal sexual offenses had been reported to the Boca Raton Police Department as having occurred at on-campus Lynn University student housing facilities in 2014." *Id.* at 17. But because the Complaint does not state the genders of those involved, it does not support the plausible inference that these occurrences generated pressure to convict male students of sexual assault because of their gender.

7

result, Lynn administrators were instructed to take a hard line toward male students accused of sexual battery by female students, while not prosecuting any female students for similar alleged offenses." *Id.* at ¶ 18. Plaintiff also puts forward the fact that in April 2015 Defendant curated a sexual assault awareness month that included "dedicated demonstrations to honor a female who was raped by a male instructor[,] who was found not guilty because of her choices in clothing." *Id.* at ¶ 19. Finally, Plaintiff straightforwardly states that "Lynn University was aware of the school's specific negative public attention . . ." *Id.* at ¶ 22.

     A great deal of the Amended Complaint is dedicated to allegations about national pressure to crack down on sexual assault. It focuses on the "Dear Colleague" letter sent to universities across the nation, including Defendant, on April 4, 2011. *Id.* at 13. The letter included "new guidance about Title IX" as well as "a long section on best practices." DE 47 at ¶ 13-14. Plaintiff alleges that the letter induced Defendant to implement policies "all but designed to produce 'false positives'" in order to vouchsafe its federal funding. *Id.* at ¶ 15-16. The Amended Complaint further alleges that "[w]hile the policy was ostensibly gender neutral, it was widely understood, including by Lynn's administration, to be aimed at prosecuting and punishing male students accused of sexual battery by female students." *Id* at ¶ 11.

     A similar allegation was made in *Cummins*: "Partly out of concern for the Department of Education enforcement . . . UC [erroneously] decided to impose discipline on John Doe I and John Doe II . . . to demonstrate to the Department of Education that Defendant would take action against males accused of sexual harassment." The Sixth Circuit characterized this as a conclusory allegation "that the Department of Education's 'Dear Colleague Letter' induced [Defendant] to discriminate against males in sexual-assault investigations in order to preserve federal funding" which was "without more, [] insufficient to create a plausible claim of gender

bias." *Cummins*, 2016 WL 7093996, at *13. The allegation in *Cummins* is arguably distinguishable from the allegation in this case because any assertion that UC understood the Department of Education's policy to be aimed at males is only implicit. But that distinction is too fine for reliance. The Court agrees that, without more, allegations that Defendant was cognizant of national pressure to prosecute and punish male students accused of sexual assault by female students would not suffice to support a plausible inference of gender bias. But, as discussed above, there is more. Plaintiff's allegations of national pressure are just another pebble on the scale. That makes the instant case more similar to *Columbia*, which the *Cummins* opinion distinguished as "involv[ing] additional facts substantiating the plaintiff's claim that federal-government influence had led to gender bias in the university's enforcement proceeding." *Id.* Plaintiff, having alleged that Defendant's representatives were cognizant of criticism levied at Defendant's handling of sexual assault complaints by female students against males and having coupled those allegations with (albeit more general) assertions about similar nationwide pressure, has done enough. The Amended Complaint supports the plausible inference of a causal connection between the flawed outcome and gender bias.

Plaintiff again emphasizes his allegation regarding procedural irregularities, arguing that these "raise the inference of bias *standing alone* because Roe was afforded unparalleled and unequal treatment and say in the John Doe investigation and conduct hearing." DE 72 at 10 (emphasis added). But, as this Court has previously emphasized, "the fact of procedural missteps that happened to disadvantage a male student in favor of a female student do not, standing alone, support the plausible inference that those missteps occurred *because of* the accused student's gender." DE 45 at 8. The two circuit courts to address the question have so held. The Second Circuit held that Plaintiff's allegations of procedural unfairness, although sufficient to support an

9

inference of some bias, did not "necessarily relate to bias on account of sex." *Columbia*, 831 F.3d at 57. The Sixth Circuit held that absent some connection to gender such "deficiencies show at most a disciplinary system that is biased in favor of alleged victims and against those accused of sexual misconduct." *Cummins*, 2016 WL 7093996, at *13.

### B. Whether Plaintiff Has Pleaded His State Law Claims.[7]

Defendant argues that Plaintiff has failed to plead a breach of contract for two reasons. The first reason is that Plaintiff failed to identify any deviations from Lynn's Sexual and Gender-Based Misconduct Policy. But Plaintiff has done so. Specifically, Plaintiff alleges that, in violation of Section 8.11.1.5(a), which provides that a student's advisor "may participate as a 'silent observer' in any meeting or proceeding related to the investigation or resolution of the process," Mary Roe's student advisor was allowed to "intervene in the proceedings numerous times." DE 47 at ¶ 49(b). Defendant counters that truly silent observation is not required; instead, "both the Complainant and Respondent(s) may have an advisor accompany (but not actively participate) him or her through the investigative process." DE 25 at 9. Defendant further argues that Plaintiff has alleged no facts that constitute active participation. But Plaintiff alleges: "Roe only repeated what her attorney told her to say, and otherwise her lawyer answered questions for her the whole time. . ." DE 47 at ¶ 49(b). Taking this fact as true and drawing all reasonable inferences in Plaintiff's favor, this is an allegation of active participation.

Defendant also argues that Plaintiff's breach of contract claim must fail because "Plaintiff has failed to allege facts showing that [any] deviation was arbitrary or capricious." DE 25 at 9. Defendant cites to *Sirpal v. University of Miami*, in which the Eleventh Circuit (at the summary judgment stage) rejected the argument that showing deviations from the procedure outlines in the

---

[7] Defendant incorporated these arguments from its first Motion to Dismiss by reference into its second Motion to Dismiss.

student handbook sufficed to make out a breach of contract claim because plaintiff "failed to show that any of the procedures he cites in any of UM's documents were mandatory and or exclusive, and fails to establish that UM's decision to apply [a different procedure] was arbitrary malicious or in bad faith." 509 Fed. App'x 924, 929 (11th Cir. 2013). However, Plaintiff alleges that this deviation was part of a "totally flawed and unfair proceeding tilted heavily against Plaintiff because of his male gender . . ." DE 47 at ¶ 49(a). Taken in the light most favorable to Plaintiff, this allegation supports the inference that Defendant chose to ignore the requirements of Section 8.11.1.5(a) because of gender bias. Surely a deviation from policy alleged to have been motivated by gender bias is arbitrary malicious or in bad faith. Plaintiff's breach of contract claim survives.

Defendant argues that Plaintiff's claim for a breach of the implied covenant of good faith and fear dealing fails for two reasons. Plaintiff has, according to Defendant, failed to link that claim to an express contractual provision. However, Section 8.11.1.5(a) of Lynn's Sexual and Gender-Based Misconduct Policy provides a viable contractual hook. Defendant also argues that Plaintiff's claim must fail because

> "[a] claimant asserting a cause of action for breach of the implied covenant must allege a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party" and no such "conscious and deliberate act" has been alleged here.

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012). However, as noted above, Plaintiff has alleged that Section 8.11.1.5(a) was disregarded as part of a "totally flawed and unfair proceeding tilted heavily against Plaintiff because of his male gender . . ." DE 47 at ¶ 49(a). Disregarding a policy because of gender bias is more than "an honest mistake, bad

11

judgment or negligence." Therefore, Plaintiff's claim for a breach of the implied covenant of good faith and fear dealing survives.

V.      CONCLUSION

Because Plaintiff has sufficiently alleged that the discrimination he suffered was motivated by his gender, the Motion to Dismiss is **DENIED** as to Plaintiff's Title IX claim. Moreover, Plaintiff has properly pleaded his state law claims, as to which the Motion to Dismiss is also **DENIED**. This case shall go forward. Defendant shall file an Answer to the Amended Complaint by no later than January 30, 2017.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 19th day of January, 2017.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE