UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:16-CV-80850-ROSENBERG/BRANNON

JOHN DOE,

    Plaintiff,

v.

LYNN UNIVERSITY, INC.,
A Florida not for profit corporation
d/b/a Lynn University,

    Defendant.
_____/

## ORDER DENYING NON-PARTY'S APPEAL AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL OF PROTECTIVE ORDERS

The Magistrate Judge has, for months, carefully curated discovery in this sensitive, hotly-contested case. Indeed, in the last two months alone, three hearings have been held on discovery matters. Two motions for protective orders have been made. DE 70, 69. One motion—made by Mary Roe's parents and requesting that their depositions be precluded or, alternatively, stayed—was denied. DE 76 (ruling on DE 70). The other—a motion by Mary Roe requesting the same relief—was granted in part and denied in part. DE 85 (ruling on DE 69). Mary Roe's deposition was allowed to go forward, but certain conditions were imposed. *Id.* These orders are now being appealed by Plaintiff, John Doe, and by the non-parties whose depositions they concern, Mary Roe and her parents.[1] DE 91, 92. Mary Roe and her parents have filed a Response to Plaintiff's Appeal; Plaintiff has not done likewise. DE 109. The expedited briefing schedule did not permit the filing of a Reply. DE 88. For the reasons discussed below, the appeal by Mary Roe and her parents is **DENIED**. John Doe's appeal is **GRANTED IN PART AND DENIED IN PART**.

---

[1] John Doe and Mary Roe are pseudonyms.

## I. STANDARD OF REVIEW

The orders at issue are not dispositive of any party's claim or defense; rather, they are nondispositive discovery orders. *See Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1346 (M.D. Fla. 2013). The appealing parties, therefore, bear the heavy burden of showing that the orders are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). It is "extremely difficult to justify alteration of the magistrate judge's nondispositive actions," 12 Wright, Miller & Marcus, *Federal Practice and Procedure Civ. 2d* § 3069, because "[c]lear error is [a] highly deferential standard of review." *Holton v. City of Thomasville School Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005).

An order is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Holton*, 425 F.3d at 1350 (internal citations and quotation marks omitted). An order is contrary to law where "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tolz v. Geico General Ins. Co.*, No. 08-cv-80663, 2010 WL 384745, at *2 (S.D. Fla. Jan. 27, 2010).

## II. ANALYSIS

Under Federal Rule of Civil Procedure 26(c)(1) a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense" upon a showing of "good cause." The good cause standard "calls for a sound basis or legitimate need to limit discovery of the subject information." *Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1370 (S.D. Fla. 2009). "In addition to requiring good cause, [the Eleventh Circuit] has also required the district court to balance the interests of those requesting the order." *McCarthy v. Bennett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989).

Mary Roe and her parents both argue that the Magistrate Judge erred in permitting their depositions to go forward at all. DE 91. Alternatively, Mary Roe and her parents both contend that the Magistrate Judge erred by failing to stay their depositions until after a ruling on the pending motion to dismiss. *Id.* Plaintiff argues that the Magistrate Judge erred by disallowing audiovisual recording of Mary Roe's deposition, by not allowing Plaintiff to appear in person at Mary Roe's deposition, by prohibiting Plaintiff from asking relevant deposition questions of Mary Roe, by ordering the Plaintiff to hand over his proposed depositions questions for Mary Roe to all parties, and by limiting Mary Roe's deposition to three hours. DE 92 at 17. The Court now addresses each of these arguments in turn, starting with those advanced by Mary Roe and her parents.

> A. Whether The Magistrate Judge Erred By Declining To Prohibit Mary Roe's Deposition And That Of Her Parents.

Mary Roe argues that it was clearly erroneous and contrary to law for the Magistrate Judge to permit her deposition. The Court disagrees. The Magistrate Judge did not err by concluding that Mary Roe failed to demonstrate good cause for precluding her deposition. And, even if the Magistrate Judge had erred by so concluding, it would not have been error for the Magistrate Judge to conclude that Mary Roe's interest in not being deposed was outweighed by Plaintiff's interest in obtaining the relevant information in her possession.

"The burden of showing good cause to preclude a deposition altogether is a heavy one." *Dunford v. Rolly Marine Service Co.*, 233 F.R.D. 635, 637 (S.D. Fla. 2005) (collecting cases). Here, Mary Roe is a non-party and two treating physicians attested that sitting for a deposition would exacerbate Mary Roe's Juvenile Myoclonic Epilepsy, threatening her well-being. DE 69-1, 69-2. But it was not reversible error for the Magistrate Judge to conclude that these attestations did not provide good cause for precluding her deposition altogether, even in light of her non-

3

party status.  Indeed, the incredible severity of the circumstances in both of the cases cited by Mary Roe only reinforces the absence of clear error here. *See, e.g.*, *id.* (finding the sort of "rare circumstance[] that may preclude the taking of a deposition altogether" where deponent was presently hospitalized as a result of a "serious acute brain condition that is life threatening"); *In re McCorhill Pub., Inc.*, 91 B.R. 223, 225 (S.D.N.Y. 1998) (precluding deposition in light of "unequivocal testimony" that deponent may have been "catapulted into heart failure" during his deposition).

Moreover, Mary Roe possesses certain information about her interactions with Defendant that is both unique and relevant to Plaintiff's Title IX claim. Even had Mary Roe presented good cause for precluding her deposition, it would not have been error for the Magistrate Judge to conclude that her showing of good cause was outweighed by Plaintiff's interest in obtaining this relevant testimony. The Court, therefore, affirms the Magistrate Judge's decision to permit Mary Roe's deposition.[2]

The appeal further states that "Roe and her Parents object to the Magistrate's Orders to the extent that they permit the taking of Roe *and her Parents'* depositions." DE 91 at 3 (emphasis added). However, the only arguments presented as to why it was clearly erroneous to permit the depositions of Mary Roe's parents is that they are not parties to the litigation and that their testimony is of minimal relevance. DE 91 at 4-5. The Court cannot find that these reasons alone provide good cause for precluding the depositions of Mary Roe's parents. As the Court noted above, the burden is a heavy one. The Court, therefore, affirms the Magistrate Judge's decision to permit the depositions of Mary Roe's parents.

---

[2] The conditions that the Magistrate Judge imposed on that deposition for Mary Roe's protection are discussed in the sections that follow.

4

      B.  Whether The Magistrate Judge Erred By Failing To Continue Mary Roe's Deposition And That Of Her Parents Until After An Order On The Pending Motion To Dismiss.

Mary Roe and her parents also object to "[t]he Magistrate's implicit finding that there is no need to defer the depositions until after the decision on the pending motion to dismiss." DE 91 at 6. This argument is moot. On January 10, 2017, the Court issued an Order clarifying that a decision on the pending motion to dismiss will issue in advance of the depositions. *See* DE 95.

      C.  Whether The Magistrate Judge Erred By Disallowing Audiovisual Recording.

Federal Rule of Civil Procedure 30(b)(3) states that "testimony may be recorded by audio, audiovisual, or stenographic means." But there is a caveat: "[u]nless the court orders otherwise." Fed. R. Civ. P. 30(b)(3). Here, the Magistrate Judge ordered otherwise. *See* DE 85 ("The deposition shall not be videotaped."). Plaintiff argues that this order was clearly erroneous and contrary to law. Not so.

Defendant first argues that "Mary Roe has not shown good cause justifying her request that her deposition not be videotaped." DE 92 at 15. Mary Roe's Motion for Protective Order included supporting letters from her physicians stating that being subpoenaed had increased Mary Roe's anxiety level, which posed a threat to her health because "emotional . . . stressors are known to exacerbate [] generalized tonic clonic seizures." DE 69-1. Her counsel argued that the "obvious intimidation" that would result from videotaping her deposition would "only further raise Roe's level of anxiety and create a greater risk of seizures further jeopardizing Roe's mental and physical health." DE 82 at 2. It was not error for the Magistrate Judge to conclude, in light of that evidence and counsel's common-sense argument, that good cause existed for requiring Plaintiff to take Mary Roe's deposition by other available means.

Defendant also argues that, on balance, Plaintiff's interest in a videotaped deposition outweighs Mary Roe's interest in not being videotaped. Plaintiff's focus is the litigation value of

5

a taped deposition. The Court acknowledges the support for the proposition that an audiovisual deposition is a valuable tool. However, there is nothing clearly erroneous or contrary to law about the Magistrate Judge's decision that this litigation value is outweighed by the potential cost to Mary Roe's health. In the absence of clear error or legal authority to the contrary, the Court affirms the Magistrate Judge's decision that "[t]he deposition shall not be videotaped." DE 85.

    D. <u>Whether The Magistrate Judge Erred By Not Allowing Plaintiff To Attend In Person</u>.

Plaintiff argues that it was clear error to prohibit Plaintiff from attending Mary Roe's deposition in person. It was not. The Federal Rules of Civil Procedure specify that a protective order may "designate[] the persons who may be present while discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). And, upon a showing of good cause, Rule 26(c)(1)(E) permits the exclusion of a party. Before the 1970 revision of the Rules of Discovery, courts could exclude all "except the *parties to the action* and their officers or counsel . . ." Fed. R. Civ. P. 30(b) (emphasis added). The 1970 revision expanded courts' authority, permitting the exclusion of anyone not designated by the court. *See Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973).

It was not reversible error for the Magistrate Judge to conclude that such good cause was shown here.[3] Mary Roe suffers from Juvenile Myoclonic Epilepsy. DE 69. As a result, she is subject to grand mal seizures. *Id.* The primary factors in causing these seizures: anxiety and stress. According to one of her treating physicians: "[Mary Roe] has experienced severe depression and anxiety as a result of the assault." DE 69-1. And there has been a corresponding spike in her seizure rate. Between 2011 and 2014 Mary Roe experienced four seizures; in the

---

[3] The cases cited by Plaintiff are each distinguishable. For example, in *Ferrigno v. Yoder*, 495 So. 2d 886, 888 (Fla. 1st DCA 1986), the court held that the trial court abused its discretion by granting a protective order requiring a husband and wife to be deposed separately. It found that the need to "elicit candid responses" did not constitute good cause. Here, the asserted good cause is the need to protect a non-party's health, which is hardly analogous.

nine months following the alleged rape she experienced eight seizures. *Id.* Mary Roe's treating psychiatrist attested that "[s]ince receiving the subpoena, [Mary Roe's] level of anxiety has increased and she has been experiencing nightmares, flashbacks at night and also some flashbacks during the day." DE 69-2. That evidence demonstrates that the anxiety caused by her deposition may well worsen Mary Roe's condition. In light of that good cause, it was neither clearly erroneous nor contrary to law for the Magistrate Judge to spare Mary Roe the prospect of sitting face to face with her alleged rapist in an attempt to mitigate some of her anxiety.

The balance of interests does not require a different result. The Magistrate Judge has taken corresponding measures to protect John Doe's rights as a party. John Doe "may appear by Skype or other electronic means so long as Mary Roe cannot see him." DE 85. He will, therefore, be able to hear the questions asked as well as the responses given. And the Order does not preclude real-time communication between John Doe and his counsel. On the contrary, the two will be able to communicate by real-time electronic means, such as text or instant messaging, during the deposition. John Doe will also be able to consult with his counsel during breaks. Any breaks taken to facilitate discussion between John Doe and his counsel will not be counted against the time permitted for the deposition. The Magistrate Judge's order that John Doe may not appear in person is affirmed.

> E. Whether The Magistrate Judge Erred By Prohibiting Plaintiff's Counsel From Asking Relevant Deposition Questions Of Mary Roe.

During a discovery hearing, the Magistrate Judge ordered Plaintiff to submit for review any and all questions that Plaintiff planned to ask Mary Roe during her deposition. Plaintiff submitted approximately one hundred and twenty such questions. Fifteen deposition questions were approved by the Magistrate Judge. Plaintiff does not argue on appeal that he should not have been required to present the Magistrate Judge with his deposition questions for screening

and approval. Rather, Plaintiff argues that the Magistrate Judge erred by excluding relevant questions.[4] For the reasons below, the Court affirms in part and reverses in part.

To provide context for the Court's review of the Magistrate Judge's ruling on Plaintiff's proposed deposition questions, the Court finds it necessary to clarify what this case is about, and what it is not. The nature of a number of the proposed questions suggests confusion as to exactly what the issues are being litigated in this case. Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Title IX challenges to university disciplinary proceedings can, as the Second Circuit has observed, be lumped into two categories: erroneous outcome and selective enforcement. Students bringing a selective enforcement challenge allege that, guilt or innocence aside, the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both. DE 45 at 4. Students bringing an erroneous outcome challenge allege that gender bias played a role in the wrongful conviction of an innocent student. *Id.*

Plaintiff, who has brought an erroneous outcome challenge, characterizes as "a critical issue in this case" whether "in truth and in fact [Mary Roe] consented to engaging in sexual intercourse with Plaintiff on September 18, 2015." DE 92 at 5. That position misconceives the erroneous outcome challenge. Whereas the focus in a selective enforcement challenge is on whether gender affected the initiation of the proceedings or the penalty imposed, the focus in an erroneous outcome challenge is on whether gender affected the *process*. It is true that "the claim is that the plaintiff was innocent and wrongly found to have committed an offense." *Yusuf*, 35 F.3d at 715. But the central question is not whether Plaintiff is "innocent" in the sense that he did not commit the act of which he stood accused. Rather, it is whether Plaintiff is "innocent" in the

---

[4] The complete list of questions is contained in sealed docket entry 106.

sense that he was found to have committed that act following a proceeding that could not support that result. Plaintiff must then show the required connection between that erroneous outcome and Plaintiff's gender.

Plaintiff further argues that "if [Mary Roe] consented to having sex with Plaintiff . . . [the] penalties imposed upon Plaintiff will be shown to have been a sham, a travesty of justice, and a violation of his due process rights under Title IX." DE 92 at 10. But, again, that position misconceives the erroneous outcome challenge. Consider this hypothetical. Imagine a student that is, indeed, innocent—"in truth and in fact," to borrow Plaintiff's phrase. DE 92 at 5. Defendant fails to uncover evidence of the student's innocence through no fault of its own. The physical evidence is in equipoise and a witness with exculpatory testimony simply does not come forward. The decision makers are left to assess the credibility of the parties' testimony. After a procedurally flawless hearing, the decision makers credit the testimony of the accused. The result would be "wrong" as a matter of fact. But Plaintiff very well may not succeed on an erroneous outcome challenge. The outcome must be accurate in the sense that it was not the result of a "procedurally or otherwise flawed proceeding." *Yusuf*, 35 F.3d at 715. It need not be accurate as a matter of truth. This distinction is pivotal—it separates the relevant areas of inquiry from the merely tangential ones.

With that clarification in mind, the Court now turns to the matter at hand. Rule 26(c)(1)(D) empowers courts issuing protective orders to "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." The standard is "good cause, which calls for a sound basis or legitimate need to limit discovery of the subject information." *Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1370 (S.D. Fla. 2009). "In addition to requiring good cause, [the Eleventh Circuit] has also required the district

9

court to balance the interests of those requesting the order." *McCarthy v. Bennett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989).

Mary Roe has shown that her alleged assault and the ensuing investigation caused her anxiety which, in turn, led to an increase in her seizure rate. DE 69 She has also shown that the looming deposition in this case has further increased her anxiety, making another spike in her seizure rate likely. *Id.* Indeed, two physicians attested to the threat to Mary Roe's well-being. DE 69-1, 69-2. The Magistrate Judge, in light of that evidence, concluded that the demonstrated threat to Mary Roe's health was good cause to limit the scope of her deposition, which concerns the same alleged assault and investigation that precipitated the worsening of her health problems. That conclusion is neither clearly erroneous nor contrary to law.  Plaintiff, however, asserts that his countervailing interest in exploring areas of inquiry relevant to his case outweighs Mary Roe's stated interest with regard to each of the questions submitted to the Magistrate Judge for review and approval. Whether the Magistrate Judge erred in reaching the opposite conclusion with regard to many of those questions is the inquiry that remains.[5]

Plaintiff's proposed questions are grouped into several general topics designated by headings. For the sake of clarity, the Court draws on Plaintiff's organization and begins with a summary of its ruling. The first section of Plaintiff's proposed questions, labeled "Background," contains questions one through thirty-three. The second section, labeled "Lynn University," contains questions thirty-four through forty-four. The Court affirms the Magistrate's ruling with regard to the questions in both of these sections (i.e. questions one through forty-four). Plaintiff may, therefore, only ask those previously approved—specifically, questions one, two, and thirty-

---

[5] The Court emphasizes that it has only evaluated whether the questions listed ought to be excluded under the protective order. This evaluation is not to be taken as any indication that other objections (as to compound questions, privilege, etc.) are not warranted.

four and "any reasonable follow-up questions pertaining [] to these permitted questions." The third section, labeled "[John Doe]," contains questions forty-five through eighty-eight. The Court affirms the Magistrate's ruling with regard to the questions in that section. Plaintiff may, therefore, not ask any of questions forty-five through eighty-eight. The fourth section, labeled "The Lynn University Disciplinary Process Against [John Doe] And The Conduct Hearing Of December 11, 2015," contains questions eighty-nine through one hundred and fifteen. The Court reverses the Magistrate Judge's decision to permit only some of these questions. Plaintiff may ask all of the questions in this section. Finally, the Court affirms the Magistrate Judge's decision regarding the as-of-yet-unknown questions about the five documents contained in the fifth section, labeled "Witness' Prior Statements."

    a.   Questions 1-44: Labeled "Background" and "Lynn University."

With regard to the first forty-four questions, the Court affirms the Magistrate Judge's decision to exclude all but questions one, two, four, and thirty-four As noted above, the Magistrate Judge did not err in concluding that Mary Roe had shown good cause for restricting the scope of her deposition. The question, therefore, is whether Plaintiff's stated interest in exploring areas of inquiry relevant to his case outweighs Mary Roe's interest. The first forty-four questions all go to generalized background. None strike at the issues at the heart of this case. In light of that limited relevancy, it was not clear error or contrary to law for the Magistrate Judge to conclude that Mary Roe's interest in their exclusion (i.e. protecting her health, particularly in light of her non-party status) won the day.[6]

---

[6] This same analysis applies to questions forty-five, eighty-seven and eighty-eight contained in the group of questions labeled "[John Doe]."

11

      b.   <u>Questions 45-88: Labeled "[John Doe]."</u>

The Court reverses the Magistrate Judge's decision to exclude questions seventy-nine, eighty and eighty-one in their entirety, but affirms the Magistrate Judge's decision to exclude the remainder of questions forty-five through eighty-eight. Again, the good cause asserted—namely, the protection of Mary Roe's health—is sufficient. Therefore, the Court turns to the balancing of interests. But unlike the first forty-four questions, which all go to generalized background, questions forty-five through eighty-eight address different subjects. The Court will, accordingly, address them in sub-groups.

<u>Questions 46-49</u>: As written, questions forty-six[7] through forty-nine go to the events of September 18, 2015 that preceded the meeting between Mary Roe and Plaintiff. What actually occurred before the pair met, however, is not at issue in this case. What is at issue is how the Defendant went about investigating the events of September 18, 2015, what information Defendant ultimately possessed, and how Defendant acted on that information in the disciplinary proceeding against Plaintiff. Those directly relevant areas of inquiry are not addressed by Plaintiff's questions, as written. There is a clear distinction, as far as relevancy is concerned, between questioning Mary Roe about the actual events of September 18, 2015, and asking Mary Roe what she told representatives of Defendant about those events during the investigation and the ensuing proceedings. So, once again, the Magistrate Judge did not err by contrasting the limited relevancy of the actual events of September 18, 2015 against the threat to Mary Roe's health as well as her non-party status and concluding that the questions ought to be excluded.

<u>Questions 50-62 and 64-67</u>: As written, questions fifty through sixty-two and questions sixty-four through sixty-seven all go to what actually occurred between Mary Roe and Plaintiff

---

[7] Question forty-five is addressed below.

12

on the night of September 18, 2015. But, as discussed above, what actually occurred between Mary Roe and Plaintiff on the night of September 18, 2015 is not at issue. So, once again, the Magistrate Judge did not err by contrasting the limited relevancy of the actual events of September 18, 2015 against the threat to Mary Roe's health as well as her non-party status and concluding that the questions ought to be excluded.

Questions 63 and 74-77: As written, question sixty-three and questions seventy-four through seventy-seven go to the events immediately following Plaintiff's alleged assault (i.e. the events of September 18, 2015 and of the early hours of September 19, 2015). But, what actually occurred immediately following Plaintiff's alleged assault is not at issue. TheMagistrate Judge did not err by contrasting the limited relevancy of the events immediately following Plaintiff's alleged assault against the threat to Mary Roe's health as well as her non-party status and concluding that the questions ought to be excluded.

Questions 68-73: As written, questions sixty-eight through seventy-three go to what actually occurred during the investigation of the alleged assault conducted by the Boca Raton Police Department. What actually occurred during the investigation conducted by the Boca Raton Police Department is not at issue. So, the Magistrate Judge did not err by contrasting the limited relevancy of what actually occurred during the investigation of the alleged assault conducted by the Boca Raton Police Department against the threat to Mary Roe's health as well as her non-party status and concluding that the questions ought to be excluded.

Questions 78-81: However, questions seventy-eight through eighty-one are directly aimed at the issue in this case. For this reason, it was clear error for the Magistrate Judge to exclude these questions. Plaintiff ought to be permitted to inquire as to the identity of the University officials with whom Mary Roe discussed the events of September 18, 2015, as well as

where and when those discussions took place. Plaintiff also ought to be able to ask what Mary Roe told University officials about the events of September 18, 2015. Plaintiff also ought to be able to ask whether any University official tested Mary Roe's blood alcohol level between September 17 and 21, 2015 and, if so, where and what the results were. These questions go directly to how the Defendant went about investigating the events of and surrounding September 18, 2015, and what information Defendant ultimately possessed. Finally, Plaintiff ought to be able to ask Mary Roe whether any University official encouraged her to institute proceedings against him with either the University or the Boca Raton Police Department. This question goes directly to the issue of bias (assuming, of course, that the encouragement bore some connection to Plaintiff's gender). Because the information discussed above is directly relevant to what Plaintiff must establish in his case and is possessed (in all likelihood) only by Defendant and Mary Roe, the balance of interests as to questions seventy-eight through eighty-one favors Plaintiff. Therefore, the Court reverses the Magistrate Judge's decision to exclude questions seventy-eight through eighty-one.

Questions 82-85: Questions eighty-two through eighty-five all go to the content of Mary Roe's discussions with her parents and her Lynn University roommates and friends about the events of and surrounding September 18, 2015. But, as discussed above, what Mary Roe's parents or Mary Roe's friends did or knew is not at issue. Thus, the Magistrate Judge did not err by contrasting the limited relevancy of Mary Roe's discussions with her parents and her Lynn University roommates and friends about the events of and surrounding September 18, 2015 against the threat to Mary Roe's health as well as her non-party status and concluding that the questions ought to be excluded.

Questions 45, 86-88: Question forty-five goes to what communication, if any, occurred between Mary Roe and John Doe before and/or after the day at issue and questions eighty-six through eighty-eight concern Mary Roe's future plans vis-à-vis Defendant. The portion of question forty-five discussing the existence of any communication with John Doe preceding the day at issue in this case is generalized background and the analysis conducted in sub-section (a) applies. The forward-looking questions in eighty-six through eighty-eight do not bear on how the Defendant went about investigating the events of and surrounding September 18, 2015, what information Defendant ultimately possessed, and how Defendant acted on that information in the disciplinary proceeding against Plaintiff. Because those directly relevant areas of inquiry are not addressed by Plaintiff's questions as written, the Magistrate Judge did not err by contrasting the limited relevancy of those forward looking questions against the threat to Mary Roe's health as well as her non-party status and concluding that the questions ought to be excluded.

c. Questions 89-115: Labeled "The Lynn University Disciplinary Process Against [John Doe] And The Conduct Hearing Of December 11, 2015."

The Court reverses the Magistrate Judge's decision to exclude some of questions eighty-nine through one hundred and fifteen. All questions contained in this section ought to be permitted. These questions are all directly relevant to the issues in this case: how the Defendant went about investigating the events of and surrounding September 18, 2015, what information Defendant ultimately possessed, and how Defendant acted on that information in the disciplinary proceeding against Plaintiff. Given that these issues are directly relevant to Plaintiff's claim, the Court finds that the Magistrate Judge erred by finding that, on balance, these questions ought to be excluded. Mary Roe's account of the process is unique and important. Without it, Plaintiff would be left to rely largely on accounts given by the party this lawsuit has been brought against, raising the usual concerns about bias and motive.

d.  Topics 1-5: Labeled "Witness' Prior Statements."

Finally, the Court affirms the Magistrate Judge's decision to exclude discussion of the five topics contained in the final section labeled "Witness' Prior Statements." The Magistrate Judge requested questions for assessment. But, in this final Section, Plaintiff provided only a list of prior recorded statements asserting broadly that he desired to question Mary Roe about aspects of them, including their accuracy. The Magistrate Judge could not have been expected to meaningfully assess that list. Nor will this Court attempt to do so.

e.  Questions Not Addressed By The Magistrate Judge.

As previously noted, the proposed questions, coupled with the briefing, make clear that considerable confusion persists with regard to what is (and is not) relevant to Plaintiff's Title IX claim. The Court has now clarified. In view of that clarification, it is only fair that Plaintiff be given the opportunity to ask Mary Roe questions that were not previously submitted to the Magistrate Judge but nevertheless are directly relevant to these three areas of inquiry—how the Defendant went about investigating the events of and surrounding September 18, 2015, what information Defendant ultimately possessed, and how Defendant acted on that information in the disciplinary proceeding against Plaintiff. As Mary Roe's account of the process is both unique and important, Plaintiff should be permitted to explore it. The Plaintiff may also, as was noted by the Magistrate Judge, ask reasonable follow-up questions. Plaintiff is cautioned, however, to adhere narrowly to the specific relevant areas of inquiry that the Court has clearly articulated and reiterated throughout this Order. Mary Roe is a non-party who will, according to her physicians, be strained by sitting for a deposition in this case. The Court takes very seriously the measures that have been put in place to protect her pursuant to Federal Rule of Civil Procedure 26(c).

F. **Whether The Magistrate Judge Erred By Requiring Plaintiff To Turn Over Proposed Deposition Questions For May Roe To All Parties.**

Plaintiff's final argument is that the Magistrate Judge erred as a matter of law by ordering that the list of proposed deposition questions be turned over to all parties. The Court agrees. Opinion work product encompasses all materials that reflect an attorney's mental impressions, conclusions, opinions, or legal theories. *Hickman v. Taylor*, 329 U.S. 495 (1967). Proposed deposition questions fall under that umbrella, providing important insight into an attorney's approach to the case. It was, therefore, error to require that Plaintiff provide his proposed questions to all parties involved in this litigation.

Mary Roe argues that if the questions are sealed her counsel will not be able to determine whether Plaintiff is abiding by the limits imposed on discovery. It is true that the precise questions excluded have not been made known to Mary Roe. However, the Court will know. Should the Court find upon a motion before the Court and a review of the deposition transcript that Plaintiff violated the restrictions imposed on Mary Roe's deposition, appropriate sanctions may be imposed. Furthermore, where questions apart from those submitted to the Magistrate Judge are concerned, Mary Roe's counsel will be able to identify whether or not those questions are limited to the topic of how the Defendant went about investigating the events of and surrounding September 18, 2015, what information Defendant ultimately possessed, and how Defendant acted on that information in the disciplinary proceeding against Plaintiff. Discovery into that investigation necessarily includes communications that took place between the Defendant and Mary Roe.

G. **Whether The Magistrate Judge Erred By Limiting Deposition To Three Hours.**

Plaintiff objects to the Magistrate Judge's decision to limit Mary Roe's deposition to three hours. However, Plaintiff provides no argument in support of his objection apart from the

17

blanket statement (applicable to all of his objections) that "these restrictions violate[] Plaintiff's due process rights to discover facts relevant to this case so as to be able to prepare for trial." DE 92 at 4. The Court declines to find that the Magistrate Judge committed reversible error in light of this sentence. However, after the deposition, should Plaintiff be of the view that he was not able to exhaust the permissible areas of inquiry discussed in this Order, he may move for additional time to depose Mary Roe. Any such motion shall outline with specificity the matters that remain unaddressed and why such matters could not be covered in the allotted time for the deposition. The Court also re-emphasizes that any breaks will not count toward the three hours permitted by the Magistrate Judge.

### III. CONCLUSION

The appeal by Mary Roe and her parents is **DENIED** and John Doe's appeal is **GRANTED IN PART AND DENIED IN PART**. John Doe shall be allowed to ask the portions of questions seventy-eight through eighty-one discussed above. John Doe shall be permitted to ask questions eighty-nine through one hundred and fifteen. John Doe may also ask other questions regarding how the Defendant went about investigating the events of and surrounding September 18, 2015, what information Defendant ultimately possessed, and how Defendant acted on that information in the disciplinary proceeding against Plaintiff, together with reasonable follow-up questions.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 19th day of January, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record